553 So.2d 336 (1989)
HORACIO O. FERREA NORTH AMERICAN DIVISION, INC., Appellant/Cross Appellee,
v.
MOROSO PERFORMANCE PRODUCTS, INC., a Foreign Corporation, Appellee/Cross Appellant.
Nos. 88-2370, 88-2371.
District Court of Appeal of Florida, Fourth District.
December 6, 1989.
Lawrence Bieler of Goldstein & Tanen, P.A., Miami, for appellant/cross appellee.
Frank J. Bennardo, Boca Raton, for appellee/cross appellant.
*337 GUNTHER, Judge.
Horacio O. Ferrea North American Division, Inc. (Ferrea) appeals a final judgment denying it prejudgment interest and attorney's fees pursuant to Section 57.105, Florida Statutes. Moroso Performance Prod. Inc. (Moroso) cross appeals the award of the compensatory damages to Ferrea.
In June 1987, Ferrea sued Moroso seeking damages for breach of contract and payment due on open account, as well as prejudgment interest and attorney's fees. The complaint alleged that during 1986, Ferrea sold automotive engine valves to Moroso under two invoices which Moroso failed to pay. Moroso answered, denying the allegations of the complaint and asserting as an affirmative defense that the engine valves were defective. Trial was set for the week of July 25, 1988. On July 22, 1988, just three days prior to trial, Moroso moved to amend its answer to include a second affirmative defense of setoff. The setoff was based on an earlier payment made by Moroso for a 1982 shipment of valves which Moroso claimed had been defective. Moroso's motion to amend was denied and the matter proceeded to trial. During trial, Moroso moved to amend the answer on the same grounds and to amend to conform to the evidence.
The crucial consideration in both motions to amend and motions to amend to conform with the evidence is the test of prejudice. New River Yachting Center v. Bacchiocchi, 407 So.2d 607, 609 (Fla. 4th DCA 1981), rev. denied, 415 So.2d 1360 (Fla. 1982); Lasar Manufacturing Co. v. Bachanov, 436 So.2d 236 (Fla. 3d DCA 1983); Fla.R.Civ.P. 1.190(b). Generally, leave to amend should not be denied unless the privilege has been abused or the pleading is clearly not amendable. New River Yachting, 407 So.2d at 609. However, the trial court's decision to permit or refuse amendment to pleadings will not be disturbed on appeal in the absence of an abuse of discretion. Lasar, 436 So.2d at 237.
We conclude that the record supports the trial court's finding that Moroso's amendment would concern matters that were known to it for a long, long time and that the plaintiff would be prejudiced since they had not been able to conduct any discovery or prepare a defense to Moroso's assertions. The record also reveals that the trial court did not err in denying Moroso motion to amend to conform to the evidence. In light of the pleadings, the evidence relating to the alleged setoff was correctly excluded by the trial court on the grounds of relevancy. Therefore, the record does not contain sufficient evidence to form the basis for an amendment to pleadings. Since we conclude that Moroso's arguments are without merit, we affirm the award of compensatory damages.
As to Ferrea's claim for prejudgment interest, since the verdict has liquidated damages as of a certain date, the trial court erred in denying Ferrea prejudgment interest. See Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985). Contrary to the trial court's finding, the record does not contain substantial competent evidence to support the ruling that the parties had "an express agreement, either by implication and/or by course of dealing, that there should be no interest." Thus, we reverse the trial court's denial of prejudgment interest to Ferrea.
Finally, we affirm the trial court's denial of attorney's fees to Ferrea pursuant to Section 57.105, Florida Statutes. Moroso's position in the instant litigation was not "so clearly devoid of merit both on the facts and the law as to be completely untenable." Whitten v. Progressive Casualty Ins. Co., 410 So.2d 501 (Fla. 1982).
In conclusion, we affirm the award of compensatory damages and the denial of attorney's fees. However, we reverse the denial of prejudgment interest and remand to the trial court to enter an amended final judgment awarding prejudgment interest to Ferrea.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
HERSEY, C.J., concurs.
GLICKSTEIN, J., concurs in part and dissents in part with opinion.
*338 GLICKSTEIN, Judge, concurring in part and dissenting in part.
I disagree with the majority's statement that the record does not contain substantial competent evidence to support the trial court's ruling that the parties had an agreement, by implication or by course of dealing, that no prejudgment interest would accrue. A reading of the record discloses the following testimony of Moroso employee Eugene Kidder:
Q (By Mr. Bennardo) Mr. Kidder, based upon your knowledge of your company file and the business records which you have examined in your employment, did you have a payment policy that you are aware of with Horacio Ferrea?
A Yes.
Q What was that policy that they communicated to you, if you knew it?
A We would pay within the terms of the invoices.
Q Mr. Urrutia testified they would expect payment in 30 days. You recall that testimony?
A Yes.
Q Based upon your personal knowledge in this case, did you always pay within 30 days?
A Not always.
Q Did you pay sometimes with 60 days or 90 days?
A We paid longer than 30 days. I don't know the exact number of days. I know it was longer than 30 days.
Q Were you ever charged interest?
A No.
Q Was there ever an understanding between your company and the Ferrea company that you would pay interest?
A No.
Q And did this happen on numerous occasions when you paid beyond the 30 days?
A Yes.
Q And some of these orders were very substantial, were they not, Mr. Kidder?
A Yes.
Q 50,000, 100,000, 60,000; isn't that correct?
A There were substantial payments.
MR. BENNARDO: May I see that exhibit series, please. I want the series of invoices.
Q Is it you testimony today, Mr. Kidder, that if the Court should rule in favor of the plaintiff herein, that you would not owe interest because of an implied understanding between the parties regarding interest, that you would not pay it?
A Yes
... .
CROSS EXAMINATION
Q (By Mr. Bieler) Mr. Kidder, you began working for Moroso in August of '84; isn't that correct?
A Yes.
Q How do you know what policy, if any, the company had before that time with Ferrea concerning interest?
A At the time when I came with the company, I was hired as a consultant to study inventories and so on and also to be in charge of the finance. And when I took full employment with the company in August of 1984, finance was a part of my responsibility within the company, so I was quite aware of any interest agreements that they had. And I made it my point to talk to people that were involved in 1982 such as Mr. Lichack, Mr. Moroso and Mr. Weber, who was our controller at that time, regarding any interest agreements on open account payments after the original.
Q So is your knowledge based upon what those persons have told you?
A And direct knowledge. And they said there was no interest agreement. I know we didn't pay any interest after that. So I, at the time, considered it, therefore, correct.
Furthermore, the testimony of Ferrea's vice-president and secretary, Daniel Urrutia, included the following:
Q Do you have an understanding with Moroso regarding interest in the event payments were made late?

*339 A ... [I]t is logical they would have to pay me the interest.
Q My question is, did you have an understanding that they would or would not pay interest?
A Well, yes. In turn, with letter of credit, we charge interest.
Q This is not a letter of credit transaction. With respect to transactions not involving a letter of credit, did you have an understanding regarding interest?
A No.
In my view, the foregoing testimony supports the trial court's findings as to the prejudgment interest issue. I concur with the rest of the majority's opinion.