801 So.2d 239 (2001)
Joseph A. WRANSKY, Appellant,
v.
Clorinda V. DALFO and Ahmanson & Company, d/b/a Home Savings of America, Appellees.
No. 4D00-2646.
District Court of Appeal of Florida, Fourth District.
December 12, 2001.
*240 Dennis A. Vandenberg of Peterson, Bernard, Vandenberg, Zei, Geisler & Martin, and Jane Kreusler-Walsh and Rebecca J. Mercier of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellant.
Christopher M. Larmoyeux of Christopher M. Larmoyeux, P.L., and Edna L. *241 Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellees.
Elizabeth K. Russo of Russo Parrish Appellate Firm, Miami, and Jay Green of Green & Ackerman, P.A., Fort Lauderdale, for intervenor Continental Casualty Company.
WARNER, J.
In appealing a $7.5 million punitive damages award, which it claims is excessive, the defendant's insurance company raises two issues: (1) whether a chose in action for an insurer's failure to pay a punitive damages award may be considered as part of a defendant's net worth when calculating a punitive damages award; and (2) whether the trial court erred in refusing to give a requested instruction informing the jury that it could not award an amount that would bankrupt the defendant. We hold that the chose in action may not be considered an asset in determining punitive damages and that the trial court erred in refusing to give the jury instruction requested by the defendant.
Appellee ("Dalfo") sustained serious injuries in an automobile accident with appellant ("Wransky"), who was driving while intoxicated. Wransky stipulated to liability, and the only issues for trial were compensatory and punitive damages. Prior to trial, Dalfo offered to waive her claim for punitive damages in exchange for an advance of $100,000 prior to the resolution of the case. Wransky's insurance company refused.
At trial, Wransky demonstrated that his rate of pay was about $9 per hour and that his only assets were a car worth $800 and $200 in his checking account. Dalfo introduced no contrary or additional evidence. However, Dalfo proffered the rejected offer to settle the punitive damages claim as evidence of Wransky's ability to pay. The defense objected, and the court agreed to consider the evidence post-trial. During the charge conference, Wransky requested that the court give the following instruction to the jury: "Punitive Damages should not be awarded in an amount which will result of [sic] economic castigation or bankruptcy of the Defendant." The trial court denied the instruction, concluding that the standard instruction was adequate. The standard instruction provides: "In making this determination [on punitive damages], you should consider the following: One, the nature, extent and degree of misconduct and the related circumstance; and two, the defendant's financial resources; and three, any other circumstances which may affect the amount of punitive damages."
During closing argument, Dalfo's counsel made statements diminishing the importance of Wransky's inability to pay. For example, at one point, he stated that "[i]t doesn't make any difference whether he has three hundred dollars in the bank. That's not the criteria as to what his net worth is." He also told the jury that Wransky's financial resources are only one element the jury should consider. He stated that:
[t]he purpose of a case like this, so far as punitive damages are concerned, is to let people know you get behind the wheel of an automobile and you hurt somebody and you're drunk.... You have three hundred dollars in the bank. That is no message. That is no message. The message should be what amount of money would get the attention of people not to do this anymore.
Dalfo requested punitive damages of approximately $24 million, three times the compensatory damages requested.
The jury returned a verdict awarding $618,358.28 in economic damages and *242 $10,680,000 in non-economic damages, bringing the total compensatory damages award to $11,298,358.28. The jury also awarded $15,000,000 in punitive damages. Subsequently, Wransky moved for a remittitur on both amounts. As to the punitive damages, Wransky argued, inter alia, that the award was not supported by the evidence and that it was excessive based on the evidence before the jury. Dalfo put forward evidence, by way of affidavits by attorneys, indicating that Wransky had a chose in action against his insurer, Continental Casualty Company (which intervened in this appeal). The chose in action was based on the insurer's rejection of Dalfo's offer to settle the punitive damages claim for $100,000. This bad faith action, according to one attorney, would be considered an asset under the U.S. Bankruptcy Code that would prevent Wransky from declaring bankruptcy. The court granted Wransky's motion for remittitur and reduced the punitive damages award to $7.5 million. This appeal followed.[1]
Because punitive damages are awarded to redress private injuries inflicted which partake of public wrongs, "[t]hey are to be measured by the enormity of the offense, entirely aside from the measure of compensation for the injured plaintiff." Arab Termite & Pest Control of Fla., Inc. v. Jenkins, 409 So.2d 1039, 1042-43 (Fla. 1982). However, the award must not be out of proportion to the defendant's net worth. See id. at 1043. "Punitive damages should be painful enough to provide some retribution and deterrence, but should not be allowed to destroy the defendant." Id.
Wransky argues that the reduced award of $7.5 million is still excessive and was awarded solely because the trial court considered evidence of the bad faith chose in action against the insurance company as part of his net worth. We agree that the evidence should not have been considered.
If there could be a bad faith chose in action for failure to settle the punitive damage claim, it did not exist until the punitive award was made. See Vest v. Travelers Ins. Co., 753 So.2d 1270, 1276 (Fla.2000) (holding bad faith claim "is premature until there is a determination of liability and extent of damages owed on the first party insurance contract"); State Farm Fire & Cas. Co. v. Robinson, 529 So.2d 1210, 1211 (Fla. 5th DCA 1988) ("[A] cause of action against a liability insurer by its insured does not accrue until the entry of judgment against the insured."). Because it was not in existence before the jury entered its verdict, it could not be considered as part of Wransky's net worth in determining the amount of the award. Otherwise, the size of the punitive award could be unlimited, as it essentially was in this case. See Battista v. W. World Ins. Co., 227 N.J.Super. 135, 545 A.2d 841, 849 (Law Div.1988) (rejecting argument that choses in action against an insurer amount to assets that can be considered in establishing an award of punitive damages because such an asset would make the insurer "responsible to pay damages in an amount that would never have been considered by the parties were the insurance company not the responsible entity"), rev'd in part on other grounds sub. nom., Battista v. Olson, 250 N.J.Super. 330, 594 A.2d 260 (App.Div.1991).
*243 The only evidence of Wransky's net worth was his salary of $9 per hour and $1,000 in assets. An award of $7.5 million is clearly excessive in light of such meager assets. The trial court erred in considering the bad faith chose in action as an asset and abused its discretion in entering an award far in excess of what is permissible under the law.
On the second issue, the trial court refused to give Wransky's instruction that punitive damages cannot bankrupt a defendant. Taking advantage of the court's ruling, Dalfo's attorney asked the jury not to consider Wransky's meager worth. Without such an instruction, the jury awarded an astronomical amount in relation to the financial resources of the defendant.
A "trial court is required to instruct the jury regarding the law applicable to the facts in evidence and the law of the case." Lynch v. McGovern, 270 So.2d 770, 771 (Fla. 4th DCA 1972). The standard jury instructions should be used when applicable, but "[i]f they are erroneous or inadequate the trial judge may amend them or give some other instruction which adequately instructs the jury in the circumstances of the case." Id.
Wransky's special instruction correctly summarized a proposition of law that punitive damages should not be allowed to destroy or bankrupt a defendant. See Arab Termite & Pest Control of Fla., Inc., 409 So.2d at 1043; Sutter v. Hammond, 545 So.2d 497, 498 (Fla. 4th DCA 1989). While the standard jury instruction informs the jury that it should consider the defendant's financial worth in determining an amount of punitive damages, the instruction does not inform the jury that there is an upper limit on punitive damages, i.e., an award which will not bankrupt the defendant.
In Auster v. Gertrude & Philip Strax Breast Cancer Detection Institute, Inc., 649 So.2d 883, 887 (Fla. 4th DCA 1995), we held:
This court in Cornette v. Spalding & Evenflo Cos., Inc., 608 So.2d 144 (Fla. 4th DCA 1992), adopted the Fifth District Court's test for determining when the failure to give a requested jury instruction results in reversible error. See Orange County v. Piper, 523 So.2d 196 (Fla. 5th DCA), rev. denied, 531 So.2d 1354 (Fla.1988). We adhere to the rule pronounced in Piper that the failure to give a requested instruction constitutes reversible error when the complaining party establishes that the requested instruction accurately states the applicable law, the facts in the case support giving the instruction, and the instruction was necessary to allow the jury to properly resolve all issues in the case.
In this case, failure to give the instruction resulted in a jury misled and confused by Dalfo's attorney's closing argument into believing that it could award any amount it wished irrespective of the defendant's financial resources. The failure to give the jury instruction resulted in a miscarriage of justice as to the punitive damage award. Where the defendant requests such an instruction and there is evidence of the defendant's financial resources presented at trial, we hold that it is error not to give an instruction informing the jury that the amount of punitive damages cannot bankrupt a defendant.
For the foregoing reasons, we reverse and remand this case for a new trial on punitive damages.
POLEN, C.J., and GROSS, J., concur.
NOTES
[1] Subsequent to this appeal being filed, the United States District Court for the Southern District of Florida entered a judgment on the pleadings in a declaratory judgment action filed by Wransky's insurer against Wransky and Dalfo. The court determined that the insurer had no obligation to pay the punitive damages award entered in this state court action.