961 So.2d 973 (2007)
Frances EDWARDS, Appellant,
v.
Richard J. SIMON, M.D.; Orthopedic Center of South Florida, P.A., Appellees.
No. 4D06-1502.
District Court of Appeal of Florida, Fourth District.
June 13, 2007.
Rehearing Denied August 29, 2007.
Donald Feldman, Tamarac, for appellant.
Roberta G. Mandel of Stephens Lynn Klein La Cava Hoffman & Puya, Miami, for appellees.
FARMER, J.
In this medical malpractice action, the trial court entered summary judgment in favor of the defendant surgeon because plaintiff failed to respond to the motion with an affidavit by an expert as to the standard of care. Because the discovery record reveals testimony by plaintiff's treating physician that the surgery was unnecessary, we conclude that the record discloses a triable issue of fact as to the standard of care and consequently reverse for further proceedings.
In brief the critical facts are these. Plaintiff slipped and fell in her shower suffering a shoulder injury. She visited Dr. Strain on the next day. He advised *974 her against surgery as unnecessary but, because he was not on her health care plan, he could not treat her. She then went to Dr. Simon who recommended surgery and performed the implantation of rods in her shoulder. That surgery failed to relieve her injury, which became worse. After arranging for her plan to cover him, she went back to Dr. Strain. He reminded her that he did not think she needed surgery when she first visited and, after reviewing Dr. Simon's films before surgery, said that he still thought surgery was unnecessary.
In plaintiff's suit against Dr. Simon, the issue is whether defendant acted according to the standard of care in performing unnecessary surgery on plaintiff. Dr. Strain testified to the above facts in pretrial depositions. He also testified that he had no opinion as to whether defendant negligently performed the surgery itself.
Defendant moved for summary judgment. He supported the motion with an affidavit of an orthopedics expert that was not filed until 10 days before the hearing on the motion. The affidavit stated that Dr. Simon's performance of the surgery was within the standard of care. But the affidavit failed to say whether forgoing the surgery would have been a departure from the standard of care. Nor did he state whether recommending surgery would have been a departure. Defendant essentially argued that plaintiff was unable to show that the surgery as performed contributed to or caused her present condition because plaintiff had not offered any expert opinion testimony to that effect. The trial judge agreed and granted summary judgment.
In short, the issue is whether further expert opinion testimony  specifically saying in precise words that having any surgery was below the standard of carewas necessary to defeat the motion for summary judgment. Summary judgment motions present an issue answerable from the record established in the case up to that point. The burden on the moving party is fairly described as conclusively demonstrating that the opposing party could not possibly prove up a cause of action (or defense, if the roles are reversed). Orlando v. FEI Hollywood, Inc., 898 So.2d 167 (Fla. 4th DCA 2005) (party moving for summary judgment must show conclusively the absence of any genuine issue of material fact); Serchay v. NTS Ft. Laud. Office Joint Venture, 657 So.2d 57 (Fla. 4th DCA 1995) (movant for summary judgment has burden of conclusively proving nonexistence of material fact dispute and of disproving fact matters raised as defenses). Also it is critical in summary judgment proceedings to remember that as to evidence already in the record the court must draw every possible inference in favor of the non-moving party. Id.
As with every summary judgment the issue is whether the facts are so crystallized that trial would be superfluous. In this instance, however, the body of medical malpractice law assists in the outcome. There is a distinction between a consent for surgery and a consent induced by an insufficient disclosure. In this case it is clear that plaintiff is complaining of Dr. Simon's performance of surgery when it was not medically indicated. In support of this claim she has pointed to the pretrial testimony of Dr. Strain. He clearly said that he did not think surgery was indicated when he saw her before Dr. Simon operated on her, and that he continued to have the same opinion after the operation and viewing the films on which Dr. Simon relied. That he disclaimed giving any standard of care opinion as to how well Dr. Simon did the actual surgery hardly changes his opinion that no surgery was indicated.
*975 The question here is whether this pretrial testimony by Dr. Strain is sufficient to show the existence of a triable issue even though it lacks the formal appendage of the words "standard of care." For that we find an answer in Atkins v. Humes, 110 So.2d 663 (Fla.1959). In reversing an opinion affirming a summary judgment in a medical malpractice action, the court explained:
"Nor was there a lack of expert testimony tending to prove the issue of negligence in failing to heed the classic warnings of Volkmann's contracture, even though there was no direct testimony to this effect. One physician testified that, if notified of pain in this type of case, he would examine the patient and look for a tight cast, and `in the presence of a tight cast, the cast should be bi-valved . . . to examine the arm in the area of the fracture and to also release any pressure, if the pressure is present.' Another physician testified that if there was difficulty in flexing the fingers and an undue amount of pain in attempting to extend them, he `would begin looking around a bit more. If the cast was circular, I would bi-valve it, or as you deem necessary' for the purpose of relieving the apparent pressure. We think there can be no doubt that, in the circumstances here, a jury issue was made as to Dr. Humes' negligence in this respect."
110 So.2d at 668. While the nature of the medical issues in this case and those in Atkins is not identical, the role played by the record testimony of the doctor-witnesses is functionally comparable. In Atkins the court relied on record deposition testimony by other doctors tending to show (without stating the exact words, as here) that there was evidence of malpractice by the defendant. Here Dr. Strain made clear that he thought surgery was not indicated and that the actual performance of the surgery by Dr. Simon did not change that opinion. We agree with plaintiff's argument that the performance of unnecessary surgery may constitute medical malpractice where it deviates from the standard of care and which, to defeat this motion for summary judgment, needed no further elucidation by an expert to demonstrate a jury issue.
We next address the trial court's companion refusal to allow plaintiff to amend her pleadings to state a cause of action for lack of informed consent. Because of deposition testimony by both plaintiff and defendant, plaintiff's counsel sought to amend the complaint to add a claim that Dr. Simon had failed to disclose necessary information to her to inform her consent to the extent necessary for her condition. In other words she wanted the chance to prove a related claim that her consent to the surgery was not valid because she was not given the required medical disclosure for her condition.
In this instance given the trial court's decision to grant a summary judgment, we cannot say that the accompanying denial of the motion to amend the complaint was an abuse of discretion. On remand, however, we leave it up to the court to determine whether an amendment should be permitted in light of our reversal for a trial on some future calendar.
Reversed.
STONE, J., concurs.
MAY, J., dissents with opinion.
MAY, J., dissenting.
I respectfully dissent. Three years of litigating a medical malpractice action brought the parties to a hearing on the defendant Richard J. Simon, M.D.'s motion for summary judgment. The defendant doctor provided the court with an affidavit *976 from an expert witness attesting that the surgery he performed was within the standard of care. The plaintiff attempted to counter the affidavit with the deposition testimony of the first doctor consulted by the plaintiff. The plaintiff did not file an expert witness affidavit even though the trial court gave the plaintiff ten additional days following the hearing to do so.[1] And, the deposition testimony of the first doctor did not address the standard of care.
It is important to note precisely what the first doctor testified to. In his first deposition, he testified that he thought surgery was unnecessary for the plaintiff because she had suffered a minimal fracture and had no displacement at the fracture site. He believed that a sling was all that she needed. He further testified that orthopedic literature supported his view. He did not testify concerning the standard of care and did not testify that the surgery performed by the defendant doctor fell below the standard of care.
At the second deposition, the first doctor reiterated that he neither had an opinion nor was critical of the defendant doctor's decision to treat the plaintiff by open reduction and internal fixation. "Yeah, I did not evaluate any of this with respect to standard of care." He also testified that he had not had the benefit of additional x-rays available to the defendant doctor at the time the defendant doctor decided that surgery was the better course of treatment.
When plaintiff's counsel questioned whether the first doctor told the plaintiff he was "just livid," and that the plaintiff should report the defendant doctor to the Department of Professional Regulation for doing the surgery, he replied: "I don't recall that, no." "I don't remember it. It doesn't sound like something I'd say."
"To prevail in a medical malpractice case a plaintiff must establish the following: the standard of care owed by the defendant, the defendant's breach of the standard of care, and that said breach proximately caused the damages claimed." Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984) (citing Wale v. Barnes, 278 So.2d 601, 603 (Fla.1973)). In fact, the legislature has defined standard of care as "that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." § 766.102(1), Fla. Stat. (2006). Standard of care is a legal term of art, and, in my view, not subject to paraphrasing.
Here, the defendant established by expert attestation that the defendant doctor's treatment of the plaintiff fell within the standard of care. The best the plaintiff was able to do is present deposition testimony of another doctor who testified that he would have treated the plaintiff differently. That doctor specifically refused to comment on the "standard of care."[2]
The failure of the plaintiff to create a genuine issue of material fact as to whether *977 the defendant doctor deviated from the standard of care was fatal to her case. The trial court correctly granted the defendant doctor's motion for summary judgment. I would affirm.
I further disagree with the majority's suggestion that the trial court may allow the plaintiff to amend her complaint to state a new claim upon remand. In my view, the trial court did not abuse its discretion in denying the plaintiff's motion to amend and that ruling should be affirmed. See Life Gen. Sec. Ins. Co. v. Horal, 667 So.2d 967, 969 (Fla. 4th DCA 1996) (citing Horacio O. Ferrea N. Am. Div., Inc. v. Moroso Performance Prods., Inc., 553 So.2d 336 (Fla. 4th DCA 1989)).
NOTES
[1] The trial court initially denied the motion for summary judgment without prejudice and gave the plaintiff an additional ten days to file an expert witness affidavit attesting that the defendant doctor had deviated from the standard of care in performing surgery on the plaintiff. The plaintiff chose not to file anything and the court then entered the summary judgment for the defendant.
[2] The majority appears to admit that the performance of unnecessary surgery must also deviate from the standard of care to constitute a viable medical malpractice claim. (See majority opinion at 975). Yet, the majority does not require expert testimony that specifically addresses the standard of care to defeat a motion for summary judgment.