33 So.3d 117 (2010)
James NASON and Claudia Nason, Appellants,
v.
Darrel SHAFRANSKI, Neil Shafranski and Marie Shafranski, Appellees.
No. 4D08-4293.
District Court of Appeal of Florida, Fourth District.
April 28, 2010.
*118 Elwood T. Lippincott, Jr. of Elwood T. Lippincott, Jr., P.A., Coral Gables, John W. Gautier of Gautier Law Firm, P.A., Miami, and Bard D. Rockenbach and Andrew A. Harris of Burlington & Rockenbach, P.A., West Palm Beach, for appellants.
Charles W. Hall and Mark D. Winker of Banker Lopez Gassler P.A., St. Petersburg, for appellees.
TAYLOR, J.
Plaintiff, James Nason, and his wife, Claudia Nason, appeal a jury verdict which awarded them only a small portion of the damages they sought as a result of injuries plaintiff sustained in a car accident. The defendants admitted negligence in causing the accident but disputed the amount of damages claimed by plaintiff. On appeal, plaintiff contends that the trial court erred by allowing defendants to present expert medical testimony regarding unnecessary surgeries and thereby shift the blame for plaintiff's damages from defendants to plaintiff's treating physician. Plaintiff argues that the trial court compounded the error by refusing to give plaintiff's requested jury instruction that the defendants were responsible for any damages resulting from any negligent or improper medical treatment. We agree that the trial court's refusal to give such an instruction was reversible error.
After the accident, the plaintiff complained of pain in his neck and back. He was referred to Dr. Charles Theofilos, a board certified neurological surgeon who specializes in the spine and reconstructive surgery. Dr. Theofilos testified that the plaintiff's MRIs showed disc herniations in both his cervical and lumbar regions. He began his treatment with epidural injections to plaintiff's lumbar spine. He later performed a discogram and nucleoplasty, *119 which helped plaintiff but did not cure the lumbar problem. Dr. Theofilos then removed herniated discs from plaintiff's neck and performed two fusions.
Thereafter, plaintiff continued to have low back and neck pain, and he also complained of headaches. He was referred to a pain management specialist and seen by a psychologist due to his depression and anxiety. Dr. Theofilos testified that if the plaintiff's low back symptoms continued or worsened, he would eventually need either an intradiscal decompression procedure or a two-level disc replacement.
The plaintiff testified that his medical bills to date totaled $340,687.45. His economist, Dr. Bernard Pettingill, estimated that plaintiff's economic damages (including medical care), both past and future, amounted to $733,853.
The defense called Dr. Schumacher, a board certified neurosurgeon. Dr. Schumacher testified that he reviewed the MRI scans of plaintiff's neck and lumbar region. He saw that plaintiff had a few discs that slightly bulged, "like all of us do," at C4-5 and C5-6, but he did not see any nerve compression on the plaintiff's MRIs. He disagreed with the MRI report's conclusion that the herniated material was encroaching on the spinal cord. According to Dr. Schumacher, the bulging discs on the MRIs were consistent with degenerative changes only. Moreover, plaintiff's low back appeared normal to him. In his opinion, plaintiff just suffered a sprain in the crash, which should have been treated with medication, rest, or physical therapy; surgery should have been the last option. He testified that he had never done a discogram and nucleoplasty and that he was not surprised that the procedures offered plaintiff no relief. Over plaintiff's objection, he testified that he would not have recommended that plaintiff undergo reconstructive surgery.
During the charge conference, plaintiff complained that throughout the trial, beginning with opening statement, the defendants presented a defense that Dr. Theofilos was negligent in performing unnecessary surgeries and that he caused plaintiff to suffer physical injury and depression, which were not caused by the collision. Consequently, plaintiff requested the following jury instruction:
When a person has suffered injuries by reason of the negligence of another and exercising reasonable care in securing the services of a competent physician, and in following his advice and instructions his injuries are aggravated or increased by the negligence, mistake or lack of skill of such physician, the law regards the negligence of the wrongdoer in causing the original injury.
Defense counsel countered that the defendants were not claiming that Dr. Theofilos was negligent; their position was that the plaintiff's injuries did not result from the accident but, instead, from the plaintiff's decision to undergo unnecessary surgery performed by Dr. Theofilos. The trial court declined to give the requested instruction, commenting, "I don't think anything has risen to the point of negligence, mistake or lack of skill."
During closing argument, plaintiff's counsel asked the jury to award total damages of $3 to $4 million. Defense counsel argued as follows:
And I know some folks wrote down interestingly after the surgeries Theofilos said he's got a 60 to 70 percent loss of motion in his spine. After I did what I did, he's got a 60 to 70 percent loss of motion in his spine. After three surgeries he's made him this worse off.
Folks, he didn't need surgery. He didn't need this....

*120 [Schumacher] says exactly what Alvarez says. You don't jump into surgery on a guy like this. Not at all. There's nothing on the films that says that.
Schumacher says, Well, I'm a surgeon. I've looked at films and I've been in there and seen what they look like. And you look at a film, and you go in there and look at the disc, this man had no herniated disc that needed any type of surgery. And he says, What about the future stuff that's $700,000 worth of stuff Theofilos wants to do? No way. Don't do it.
It's natural to feel some sympathy for the plaintiff here when you look at what Theofilos did.
After retiring to deliberate, the jury sent out a note that asked:
Judge Strickland, if the jury felt a provider of medical treatment to the plaintiff was unscrupulous, does that relieve the defendant under the law from liability for the consequences of that treatment?
Plaintiff's counsel urged the trial court to respond by giving the instruction he had previously requested regarding the defendants' liability for aggravation of injuries caused by subsequent medical treatment. The court again refused to give the instruction, and, instead, referred the jury to the instructions already given.
The jury returned a verdict awarding plaintiff $150,000 in medical expenses, $38,000 in lost earnings, $50,000 in future medical expenses, $0 for future earnings, $50,000 for past pain and suffering and $50,000 for future pain and suffering, for a total damage award of $338,000.
"Trial courts are accorded broad discretion in their decisions to give a particular jury instruction, and any such decision will not be reversed on appeal absent prejudicial error." Triple R Paving, Inc. v. Broward County, 774 So.2d 50, 56-57 (Fla. 4th DCA 2000). However, the "`trial court is required to instruct the jury regarding the law applicable to the facts in evidence and the law of the case.'" Wransky v. Dalfo, 801 So.2d 239, 243 (Fla. 4th DCA 2001) (quoting Lynch v. McGovern, 270 So.2d 770, 771 (Fla. 4th DCA 1972)).
As we explained in Letzter v. Cephas, 792 So.2d 481, 485 (Fla. 4th DCA 2001):
Under traditional negligence principles, a tortfeasor is responsible for all reasonably foreseeable consequences of his or her actions. See, e.g., Stark v. Holtzclaw, 90 Fla. 207, 105 So. 330, 331 (1925); Cole v. Leach, 405 So.2d 449, 450 (Fla. 4th DCA 1981). An independent, unforeseeable intervening force, however, may serve to break the causal link and extinguish liability. See Gibson v. Avis Rent-A-Car Sys., Inc., 386 So.2d 520, 522 (Fla.1980); Bosket v. Broward County Hous. Auth., 676 So.2d 72, 74 (Fla. 4th DCA 1996). Typically, the question of whether an intervening cause is reasonably foreseeable is for the jury, but an exception exists when subsequent medical negligence in treating the initial injury is involved.
It has long been the law in Florida that when one who is negligent injures another causing him to seek medical treatment, negligence in the administration of that medical treatment is foreseeable and will not serve to break the chain of causation. And, in Stuart v. Hertz Corp., the supreme court reiterated that
"Where one who has suffered personal injuries by reason of the negligence of another exercises reasonable care in securing the services of a competent physician or surgeon, and in following his advice and instructions, and his *121 injuries are thereafter aggravated or increased by the negligence, mistake, or lack of skill of such physician or surgeon, the law regards the negligence of the wrongdoer in causing the original injury as the proximate cause of the damages flowing from the subsequent negligent or unskillful treatment thereof, and holds him liable therefor."
351 So.2d at 707 (quoting J. Ray Arnold Lumber Corp. of Olustee v. Richardson, 105 Fla. 204, 141 So. 133, 135 (1932), quoting Texas Pacific Ry. Co. v. Hill, 237 U.S. 208, 35 S.Ct. 575, 59 L.Ed. 918 (1915)). When the rule in Stuart v. Hertz applies, the initial tortfeasor's remedy against the succeeding negligent health care provider lies in an action for subrogation. See Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702, 704 (Fla.1980).
The key case for this well-established principle is Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977). In that case, which also arose from a car accident, the defendants filed a third-party complaint against the treating physician, alleging that negligent treatment had caused all or part of the plaintiff's injuries. Id. at 704. The Florida Supreme Court held that the third-party malpractice claim could not be tried as part of the main lawsuit over the plaintiff's objection. Id. at 706. The court concluded that this holding was in conformity with the rule announced in J. Ray Arnold Corp., etc. v. Richardson, 105 Fla. 204, 141 So. 133 (1932), as quoted above. Id. at 707. It noted that other courts follow this same principle, quoting 57 Am. Jur.2d Negligence section 149, at 507:
[T]he rule is well established that a wrongdoer is liable for the ultimate result, although the mistake or even negligence of the physician who treated the injury may have increased the damage which would otherwise have followed from the original wrong.
Id. (alteration in original). See also Caccavella v. Silverman, 814 So.2d 1145, 1147 (Fla. 4th DCA 2002).[1]
The defendants argue that Stuart v. Hertz is inapposite because they were merely arguing below that the surgery was unnecessary, not that the physician committed medical malpractice. However, Florida law recognizes that "unnecessary surgery may constitute medical malpractice where it deviates from the standard of care." Edwards v. Simon, 961 So.2d 973, 975 (Fla. 4th DCA 2007). Although the defendants carefully avoided the term "malpractice" during trial, Dr. Schumacher's testimony and the defendants' closing argument clearly placed this issue before the jury.
In Emory v. Florida Freedom Newspapers, 687 So.2d 846 (Fla. 4th DCA 1997), we addressed a similar challenge to the trial judge's refusal to give an intervening cause instruction where testimony was admitted at trial regarding unnecessary medical treatment which allegedly worsened the plaintiff's condition. There, we reversed the judgment for defendants, concluding that there was a reasonable possibility that the jury may have been misled by the combination of evidence of unnecessary medical treatment and the absence of an intervening cause instruction. Id. at 848. We stated:

*122 Here, the jury was not instructed as to the effect of actions taken by a third party following the original negligence. Absent such an instruction, the jury may have erroneously concluded that the surgery was a substantial cause of Emory's injuries which served to sever the causal link between Emory's injuries and the automobile accident, for which Florida Freedom was admittedly responsible.
. . .
Similarly, during the trial below, the jury was presented with testimony regarding the "unnecessary" nature of Emory's medical treatment. Despite Florida Freedom's argument to the court that this testimony was only evidence that the cost of such treatment was unnecessary and, therefore, not compensable, the testimony also served to shift the blame for the injuries from Florida Freedom to Emory's surgeon. The jury was then left without any instruction as to how to treat this evidence of subsequent injury. Therefore, in accordance with the result in Dungan [v. Ford, 632 So.2d 159 (Fla. 1st DCA 1994) ], we find that the admission of this testimony, in the absence of a jury instruction addressing the issue, created a reasonable possibility that the jury was indeed misled. We, therefore, reverse the final judgment and remand for a new trial.
Id.
As did the defendants in Emory and Dungan, the defendants here argue that the reasonableness and necessity of medical expenses are always issues in a personal injury action, and that they merely contested those issues. See, e.g., E.W. Karate Assn. v. Riquelme, 638 So.2d 604, 605 (Fla. 4th DCA 1994); Irwin v. Blake, 589 So.2d 973, 974 (Fla. 4th DCA 1991).
In Dungan, the first district rejected arguments made by the defendants that their inquiry regarding the plaintiff's surgeries was directed to the reasonableness of the sums for medical expenses. Characterizing their contention as "somewhat disingenuous," the court stated:
Our review of Standard Civil Jury Instruction 6.2(c), and the cases construing the same satisfies us that the "necessarily or reasonably obtained" language used in the instruction relates simply to (1) whether the charges are for treatment the plaintiff sought for injuries at issue in a lawsuit, as opposed to treatment for some other condition, and (2) whether the charges are for a reasonable amount. Because the cases indicate that "reasonableness or necessity" can be established by lay testimony, it must involve a question of necessity from the perspective of the injured party, rather than from the perspective of a medical expert. See, Garrett v. Morris Kirschman & Co., 336 So.2d 566 (Fla. 1976), and Albertson's, Inc. v. Brady, 475 So.2d 986 (Fla. 2d DCA 1985), rev. denied, 486 So.2d 595 (Fla.1986).
632 So.2d at 163.
The court found that the defense medical expert clearly focused on the treating physician's lack of skill and judgment and poor results. It concluded that the admission of this expert testimony, coupled with the denial of a special instruction informing the jury how to handle evidence of negligent medical treatment, amounted to reversible error. Id. at 164.
In this case, the jury's confusion was apparent from the note it sent to the judge during deliberations. It sought guidance on how to handle the defendants' evidence that Dr. Theofilos was "unscrupulous." The judge's failure to dispel that confusion by granting plaintiff's request for the special instruction requires us to reverse and remand for a new trial.
Reversed and Remanded.
*123 LEVENSON, JEFFREY R., Associate Judge, concurs.
FARMER, J., concurs specially with opinion.
FARMER, J., specially concurring.
I join in Judge Taylor's opinion without reservation and write only to add a thought to her cogent analysis.
The jury instruction (JI) concerning defendant's liability for the doctor's negligence in treating plaintiff for injuries caused by defendant is a problem. I assume this is either intervening or concurring causation or something of both. At any rate, I doubt that lay jurors easily pick up this complex legal concept. Truth be told, some lawyers have trouble with it.
The issue concerns whether the law recognizes the doctor treating the victim for an injury caused by another person as part of a connected chain of causation for the victim's set of injuries. Or, instead, is the treating doctor an entirely disconnected actor and any further injuries caused by the doctor a separate matter for which the first actor is not responsible?
As Judge Taylor shows, the answer is that the law considers the treating doctor's negligence[2] in rendering medical care to the victim for the initial injuries as part of the consequences caused by the original actor's negligence that required the medical treatment. Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977). This liability is not something erupting from nowhere because it is foreseeable by the first negligent actor.
Now, we all know that negligent people causing accidents don't go around before the event thinking about what might happen to a victim during medical treatment for injuries they accidentally cause. But the fiction is that, if they did think about it, they could reasonably anticipate a doctor treating such injuries might make them worse. You cannot injure a person and reasonably expect the victim not to seek medical treatment for the injuries you caused; doctors are human and sometimes make things worse. That is the legal principle the JI must teach. But in a way readily comprehensible by someone who did not spend three years in law school.
Which brings me thus. Here is a subject begging for a good dose of plain English. In this case the special JI proposed by plaintiff is hopelessly muddled. If you persist in digging through it, you can eventually discern a correct statement of law on concurring or intervening cause by a subsequent treating doctor somewhere within. But I sure wouldn't want to try this one out on lay jurors.
We do have a standard jury instruction (FSJI) which if adapted for this case might read:
Negligence may also be a legal cause of injury even though it operates in combination with the act of another occurring after the negligence occurs if such other cause was itself reasonably foreseeable and the negligence contributes substantially to producing such injury.
See Fla. Std. Jury Instr. (Civ.) 401.12c. This is a generic instruction for concurring or intervening negligence. From a plain English perspective, I don't think this FSJI is satisfactory in cases of liability for later negligent medical treatment. I therefore offer the following draft of a JI for this subject until a standard one can be approved:
The next issue for your consideration is the claim that (defendant) is liable for the negligence of (doctor) *124 (hospital) (nurse) in treating (claimant) for injuries he claims to have suffered in (event). A person responsible for negligently injuring another may also be further liable for the ensuing negligence of any health care provider treating the injured party if:
1. injuries caused by the negligence of (defendant) reasonably required medical care or treatment by a health care provider;
2. a health care provider gave (claimant) medical care or treatment for injuries caused by (defendant) in (event); and
3. (Claimant) did not unreasonably fail to comply with that health care provider's medical advice and instructions.
Again, this is just a suggestion. But the FSJI needs a specific instruction for this complex legal subject.
NOTES
[1] We have twice certified to the Florida Supreme Court the question of whether Stuart v. Hertz is still good law since the passage of the Tort Reform and Insurance Act of 1986, which made each tortfeasor liable only for his own negligence. See Caccavella v. Silverman, 814 So.2d 1145 (Fla. 4th DCA 2002); Letzter v. Cephas, 792 So.2d 481 (Fla. 4th DCA 2001). The Florida Supreme Court has declined to answer the certified questions in both cases.
[2] Here, a mistake in judgment amounting to medical negligence.