LEVINE, J.
The issue in this case is whether appellant was entitled to an intervening cause jury instruction. We find, under the facts of this case, that the trial court erred by not instructing the jury as requested. We reverse and remand.
In December 2007, appellee rear-ended appellant while driving in West Palm Beach. Appellant filed a claim for negligence. Appellee admitted negligence and a trial ensued only on the issues of causation and damages.
At trial, appellant called several expert witnesses. Dr. Robert Simon testified about performing a minimally invasive dis-cectomy on appellant. Dr. Simon started treating appellant in 2008 regarding pain in her lower back. After appellant visited Dr. Simon on several occasions with continuing neck and back pain, the doctor performed a percutaneous discectomy on appellant. Appellant responded positively to the procedure, and the doctor reduced the impairment rating from 12% to 7%.
Dr. Jane Bistline testified about performing a lumbar discogram and epidural steroid injections on appellant. The doctor diagnosed three bulging discs, as well as a herniation in the disc between the lumbar spine and sacrum. In performing the discogram, the disc between the lumbar spine and sacrum tested positive for pain. Dr. Bistline opined that appellant suffered a permanent injury. On cross-examination, appellee asked Dr. Bistline whether the spinal wand used by Dr. Simon in the discectomy had “been deemed not to be reasonable or necessary for the treatment of low back pain.” Dr. Bistline stated that this particular wand was “really good” for low back pain.
An expert witness for appellee, Dr. Jordan Grabel, opined that the small abnormalities suffered by appellant were not *718 caused by the 2007 car accident. Dr. Gra-bel testified that the accident did not cause permanent injury to appellant and that surgery was not warranted. According to Dr. Grabel, appellant suffered from spon-dylolisthesis in the lower lumbar spine. Dr. Grabel opined that the crash did not exacerbate any preexisting condition and that the percutaneous discectomy was entirely unnecessary.
Dr. Robert Kagan, a radiologist, reviewed appellant’s MRI results. Dr. Kagan testified that on appellant’s MRI from 2004, there was a “problem” between the L5 vertebra and the sacrum, as well as some “slippage” to the L5 vertebra. Dr. Kagan testified that, in his opinion, appellant’s issues appeared to be “congenital.” Dr. Kagan did not note any condition that would improve or benefit from a percuta-neous discectomy. Dr. Kagan testified on cross-examination that a percutaneous dis-cectomy could accelerate the degeneration in appellant’s lumbar spine.
Appellee asked Dr. Kagan whether appellant would “benefit from having some type of percutaneous diskectomy performed.” Dr. Kagan responded,
No, not at all. Because percutaneous diskectomy is meant for a herniated disk. Diskectomy means to remove a herniated disk. There was never a herniated disk to begin with here, so you’re not going to help the situation with a percutaneous diskectomy. This is a pseudo herniation, it’s not a herniation.
On cross-examination, Dr. Kagan elaborated further that the disc “looks just like a herniation, but it’s not called a herniation. It’s called a pseudo herniation.” Dr. Kagan concluded that since appellant does not have a herniation, then a percutaneous discectomy would be “inappropriate” since “you don’t do a percutaneous disconnect when someone has spondylolisthesis. Forget about the herniation. Spondylolisthe-sis does not respond to percutaneous dis-kectomy.” Dr. Kagan concluded that a “[pjercutaneous diskectomy” would be “totally contraindicated in this patient. Wouldn’t do anything except accelerate the degenerative process, which would make things worse or could make things worse clinically.”
At the jury charge conference, appellant requested the following jury instruction derived from Emory v. Florida Freedom Newspapers, 687 So.2d 846 (Fla. 4th DCA 1997):
Where one who has suffered personal injuries as a result of the negligence of another seeks medical treatment from a physician or surgeon, and the injured person’s injuries are thereafter aggravated or increased by the negligence, mistake or lack of skill of such treatment, the law regards the negligence of the one causing the original injury as the proximate cause of the damages flowing from the later negligent, unskillful, or unsuccessful treatment of the physician or surgeon.
The trial court denied the instruction. The jury found appellant did not suffer any permanent injury as a result of the accident, but still awarded appellant $17,700 for past medical expenses and lost wages. This appeal ensues.
“In formulating jury instructions, the trial court is accorded broad discretion, and ‘its decision should not be reversed unless the error complained of resulted in a miscarriage of justice or the jury instructions were reasonably calculated to confuse or mislead the jury.’ ” Belle Glade Chevrolet-Cadillac Buick Pontiac Oldsmobile, Inc. v. Figgie, 54 So.3d 991, 997 (Fla. 4th DCA 2010) (citation omitted).
“[A] party is entitled to have the jury instructed upon his theory of the case when there is evidence to support the the *719 ory.” Seaboard Coastline R.R. v. Addison, 502 So.2d 1241, 1242 (Fla.1987). In order to demonstrate reversible error in a trial court’s exclusion of a proposed instruction, “appellant must prove that the requested instructions contained an accurate statement of the law, that the facts in the case supported a giving of the instructions, and that the instructions were necessary for the jury to properly resolve the issues in the case.” Brown Distrib. Co. of W. Palm Beach v. Marcell, 890 So.2d 1227, 1232 (Fla. 4th DCA 2005) (citation omitted).
Specifically, in this case, appellant claims that the testimony from appel-lee’s expert witness that the percutaneous discectomy was unnecessary or improper for appellant’s condition necessitated the court giving a proffered jury instruction on an intervening cause. “The law is well-settled that the initial tortfeasor may also be held liable for subsequent injuries caused by the negligence of health care providers.” Emory, 687 So.2d at 847.
The Florida Supreme Court stated in Stuart v. Hertz Corp., 351 So.2d 703, 707 (Fla.1977):
Where one who has suffered personal injuries by reason of the negligence of another exercises reasonable care in securing the services of a competent physician or surgeon, and in following his advice and instructions, and his injuries are thereafter aggravated or increased by the negligence, mistake, or lack of skill of such physician or surgeon, the law regards the negligence of the wrongdoer in causing the original injury as the proximate cause of the damages flowing from the subsequent negligent or unskillful treatment thereof, and holds him liable therefor.
(quoting J. Ray Arnold Lumber Corp. of Olustee v. Richardson, 105 Fla. 204, 141 So. 133 (1932)). See also Nason v. Shafranski, 33 So.3d 117 (Fla. 4th DCA 2010) (finding that defense expert’s testimony attacking reasonableness and necessity of physician’s treatment, combined with the denial of plaintiffs requested jury instruction, constituted reversible error); Dungan v. Ford, 632 So.2d 159 (Fla. 1st DCA 1994) (same).
We, therefore, find that the specific testimony presented to the jury mandated the intervening cause instruction as requested. The specific testimony in this case went beyond merely questioning the medical advisability of the treatment advocated by appellant’s experts, or questioning the wisdom of the diagnosis, prognosis, or causal relationship between the purported injuries and the alleged incident. Rather, ap-pellee’s experts concluded that the treatment utilized by appellant’s experts “would make things worse or could make things worse clinically.” The former scenario may not generally require an intervening cause instruction, while the latter situation, like in the case at bar, should result in the instruction being given as requested.
As in Emory, the admission of testimony regarding inappropriate medical treatment, and the fact that it specifically could “accelerate the degenerative process” in appellant according to the appel-lee’s expert witness, “created a reasonable possibility that the jury was indeed misled” “in the absence of a jury instruction addressing the issue.” 687 So.2d at 848.[1] *720 As such, we reverse and remand for a new trial.

Reversed and remanded.

TAYLOR and HAZOURI JJ., concur.

. Appellee further claims that the intervening cause instruction should not be given since appellant “invited” the testimony regarding the necessity of the percutaneous discectomy. It is well-settled that
when evidence is presented that the plaintiff's injuries are the result of inappropriate medical treatment, the jury must be instructed that the original tortfeasor is liable for any aggravation of the plaintiff's injuries *720 caused by subsequent medical treatment for those injuries. Even if ... plaintiff's counsel "opened the door” to such evidence, the evidence was before the jury, and the jury should have been properly instructed on the law that applied to that evidence.
Doubek v. Wal-Mart Stores, Inc., 804 So.2d 347, 349 (Fla. 4th DCA 2001) (citations omitted). Therefore, regardless whether appellant "invited” the testimony or not, the instruction would still be mandated.