LaROSE, Judge.
Joey James Pedro and Jill Pedro appeal a final judgment entered in favor of Betsy Baber in her personal injury lawsuit against them. They argue that the trial court erred in giving a jury instruction pursuant to Stuart v. Hertz Corporation, 351 So.2d 703, 707 (Fla.1977), after a medical expert testified on cross-examination that surgery performed on Ms. Baber was unnecessary. We affirm.

Background

Mr. Pedro rear-ended Ms. Baber’s vehicle. Ms. Baber drove herself to the hospital where she complained of neck and back pain. Emergency room personnel diagnosed whiplash. Ms. Baber obtained follow-up nonsurgical treatment from Dr. Wall.
After four months, Ms. Baber still had pain. She consulted Dr. Nucci, an ortho *914 pedic surgeon. He diagnosed neck and low-back muscular injury and L5-S1 disc herniation from the accident. Dr. Nucci recommended surgery. More than a year after the accident, and after several months of nonsurgical treatment, Ms. Ba-ber had surgery. Initially, the pain decreased; within months, however, her low-back pain increased.
Ms. Baber sued the Pedros. She alleged that Joey Pedro’s negligence caused her permanent injuries and that Jill Pedro, the vehicle owner, was vicariously liable. See Fischer v. Alessandrini, 907 So.2d 569, 571 (Fla. 2d DCA 2005) (“Under the dangerous instrumentality doctrine, an automobile owner is vicariously liable for damages caused by the operation of his vehicle by a permissive user.”) (citing Hertz Corp. v. Jackson, 617 So.2d 1051, 1053 (Fla.1993)). The Pedros opposed Ms. Baber’s efforts to recover medical expenses related to the back surgery.
The Pedros attacked Dr, Nucci’s credibility and professionalism. For example, in opening statement, counsel told the jury that Dr. Nucci was a personal injury doctor, he treated accident patients under letters of protection,[1] and the surgery did not help Ms. Baber. The Pedros also presented evidence challenging the reasonableness of Dr. Nucci’s charges.
The medical testimony conflicted. Dr. Nucci testified that the surgery was accident-related and improved Ms. Baber’s condition. He conceded that she still had persistent low-back pain and might require further surgery. Ms. Baber testified that her back surgery stemmed from injuries sustained in the accident; the pain only worsened after the surgery. Dr. Wall testified that the accident caused a lumbar disc herniation and an annular tear. He would have preferred that Ms. Baber continue nonsurgical therapies; ultimately he agreed that she was a surgery candidate. He testified that “not all surgeries work.” He also agreed with Dr. Nucci that Ms. Baber might need more surgery.
The Pedros called a diagnostic radiologist, Dr. Rosenbach, who testified that the disc protrusion and annular tear were degenerative and not caused by the accident. Dr. Knezevich, who performed an independent medical examination of Ms. Baber, testified that the accident caused only non-permanent cervical, thoracic, and lumbar/sacral strain that did not require surgery. On cross-examination, he elaborated that Ms. Baber “does get an impairment rating[2] based on her lumbar spine sur *915 gery being performed, but I don’t relate the lumbar spine surgery to the auto accident.” Dr. Knezevich opined that Dr. Nucci thought that surgery might help Ms. Baber’s disc abnormality, but the disc “did not appear to explain her symptoms” and the surgery did not alleviate them.
Ms. Baber’s counsel responded, “Wait. Let me stop you there. You said you wouldn’t relate it to her symptoms.... [D]id she need the surgery?” The Pedros’ counsel objected because the question suggested malpractice by Dr. Nucci. Counsel protested that Ms. Baber’s counsel was trying to get a Stuart instruction, informing the jury that a tortfeasor is responsible for additional injuries caused by the medical negligence of a physician treating the plaintiff for the original injuries. The trial court overruled the objection. Cross-examination continued. Dr. Knezevich testified that, typically, the treating physician is in a better position to decide whether a patient needs surgery, but he disagreed with Dr. Nucci’s decision to operate. Dr. Knezevich explained that disc herniations are common starting in middle age, and surgery is not likely to help where the disc abnormalities did not correlate with the symptoms.
The trial court struggled with Ms. Ba-ber’s subsequent request for a Stuart instruction. Ms. Baber wanted the instruction because the jury heard evidence that the surgery was unnecessary. The Pedros countered that their defense against paying for the surgery was not that it was unnecessary or negligent, but that it was unrelated to the accident. The trial court concluded that “we kind of cross[ed] the rubicon because the jury has heard the testimony” from defense witnesses that the surgery was unnecessary. Accordingly, the trial court gave the Stuart instruction [3] as follows:
When a person has suffered injuries by reason of the negligence of another and exercising reasonable care in seeking the services of a competent physician, and in following his advice and instructions her injuries are aggravated or increased by the negligence, mistake[,] or lack of skill of such physician, the law regards the negligence of the wrongdoer in causing the original [injjury as the legal cause of the damages flowing from the subsequent negligent or unskillful treatment thereof.
In closing, Ms. Baber’s counsel told the jury that Dr. Nucci’s unnecessary surgery permanently injured Ms. Baber and that the Pedros were responsible. The Pedros’ closing argument reminded the jury that they were arguing that the surgery was unrelated to the accident. The jury returned a verdict for Ms. Baber, finding that the Pedros’ negligence caused permanent injury and that all medical expenses resulted from the accident. After filing an unsuccessful motion for a new trial, the Pedros appealed.

Analysis

Ms. Baber relies on Dungan v. Ford, 632 So.2d 159 (Fla. 1st DCA 1994), and Nason v. Shafranski, 33 So.3d 117 (Fla. 4th DCA 2010) (Farmer, J., specially concurring), as support for the Stuart instruction. In Dungan, the plaintiff appealed the jury’s verdict denying recovery in an automobile negligence action. 632 So.2d at 160. The First District held that *916 the trial court erred in allowing the defendants to elicit testimony from their medical expert that post-accident surgery was not only unnecessary but was a substantial cause of her pain and impairment, and in then failing to give the Stuart instruction. Id. at 160. The defendants argued that they did not intend to allege that the plaintiff was injured by malpractice but only to present the jury with evidence that the surgery was not reasonable and necessary. Id. at 161. Because the expert’s testimony focused on the surgeon’s lack of skill or judgment and the poor results, the trial court was required to give a Stuart instruction. Id. at 164.
In Nason, the plaintiff appealed the trial court’s award of only a small portion of damages sought for neck and back pain caused by a car accident. 33 So.3d at 118. The plaintiffs surgeon testified that he performed surgeries that helped, but did not cure, the problem. Id. at 119. The plaintiffs pain continued; he also developed anxiety, depression, and headaches. Id. The surgeon testified that if the symptoms continued or worsened, the plaintiff would need additional surgery. Id. The defense presented medical testimony that the surgery was unnecessary because the crash caused only a sprain that could have been treated nonsurgically and did not cause the disc herniations, which were degenerative. Id. The defendants also argued that the unnecessary surgeries caused the headaches, anxiety, and depression. Id.
The Fourth District held that the trial court erred in allowing the defense to present this testimony, essentially shifting the blame for the plaintiffs damages to the treating physician and compounding the error by refusing to give a Stuart instruction. Nason, 33 So.3d at 118. The defendants maintained that they did not intend to allege physician negligence, but to assert only that the surgery was unnecessary. Id. The Fourth District held that, even though the defendants “carefully avoided the term ‘malpractice’ during trial,” the doctor’s testimony and the defendants’ closing argument “clearly placed this issue before the jury.” Id. at 121. The court pointed out that “ ‘unnecessary surgery may constitute medical malpractice where it deviates from the standard of care.’ ” Id. at 121 (quoting Edwards v. Simon, 961 So.2d 973, 975 (Fla. 4th DCA 2007)).
The Pedros’ witness, Dr. Knezevich, opined on direct examination that the surgery was unnecessary. He also concluded that the surgery did not address the symptoms and recognized an impairment rating related to the surgery. Recall, also, that Ms. Baber testified that her pain increased after the surgery. As in Nason, the Ped-ros carefully avoided the term “malpractice.” But, their expert’s testimony and counsel’s closing argument called into question the care Dr. Nucci provided. Under the circumstances, Dungan and Nason required the Stuart instruction.
The Pedros attempt to distinguish Dun-gan and Nason because the jury heard the necessity testimony from Dr. Knezevich on cross-examination. See Music v. Hebb, 744 So.2d 1169, 1171 (Fla. 2d DCA 1999) (“Questions on cross-examination must relate either to credibility or to matters elicited on direct testimony.”). They miss the mark. Ms. Baber correctly notes that the Pedros opened the door to questions about necessity by attacking Dr. Nucci’s credibility and professionalism. And, as noted earlier, Dr. Knezevich opined on direct examination that the surgery was unnecessary. The trial testimony also suggests that the surgery worsened Ms. Baber’s pain. Even if a party “opens the door” to evidence of malpractice, the trial court should instruct the jury on the law that applies to that evidence. Cf. Doubek v. *917 Wal-Mart Stores, Inc., 804 So.2d 347, 348-49 (Fla. 4th DCA 2001) (holding trial court should have given Stuart instruction even though plaintiff violated motion-in-limine order and opened the door to evidence of subsequent medical provider negligence).[4]
We find no abuse of discretion in the trial court’s allowing the necessity question. “Cross-examination of a witness is limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in its discretion, permit inquiry into additional matters.” § 90.612(2), Fla. Stat. (2010).
[W]hen the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts ... or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief....
Coxwell v. State, 361 So.2d 148, 151 (Fla.1978) (quoting Coco v. State, 62 So.2d 892, 895 (Fla.1953) (en banc)); see also Dempsey v. Shell Oil Co., 589 So.2d 373, 378 (Fla. 4th DCA 1991). We will not disturb a trial court’s decisions as to the extent of cross-examination unless the trial court has abused its discretion, resulting in substantial harm to the complaining party. Seminole Shell Co. v. Clearwater Flying Co., 156 So.2d 543, 544 (Fla. 2d DCA 1963).
The Pedros’ attempt to confine their evidence to the surgery’s unrelatedness to the accident failed. They presented evidence that Ms. Baber had preexisting degeneration, but not that it required surgery or that she was aware of any problems before the accident or would have elected to have surgery had she discovered them before the pain following the accident. Additionally, the jury could interpret the testimony that Ms. Baber had an impairment rating due to the surgery to mean that the surgery caused further injury.
We acknowledge that the trial court views necessity of treatment from the point of view of the injured party, not warring medical experts. See Dungan, 632 So.2d at 163 (citing Garrett v. Morris Kirschman & Co., 336 So.2d 566 (Fla.1976); Albertson’s, Inc. v. Brady, 475 So.2d 986 (Fla. 2d DCA 1985)); accord Nason, 33 So.3d at 122. Dr. Rosenbach testified that Ms. Baber had no history of back pain before the accident. Ms. Baber testified that she had no previous back problems and the surgery was due to her injuries. “You cannot injure a person and reasonably expect the victim not to seek medical treatment for the injuries you caused; doctors are human and sometimes make things worse.” Nason, 33 So.3d at 123 (Farmer, J., specially concurring). A patient is entitled to rely on her doctor’s advice. Dr. Nucci advised her that the accident caused her symptoms and he recommended the surgery to alleviate them.
In Tucker v. Korpita, 77 So.3d 716 (Fla. 4th DCA 2011), a defense medical expert testified that the plaintiffs disc problems were congenital, the car accident did not cause them, and the surgery was unwar *918 ranted and could accelerate degeneration and make things worse. The trial court declined to give a Stuart instruction. Tucker, 77 So.3d 716, 718. The Fourth District reversed, reasoning:
The specific testimony in this case went beyond merely questioning the medical advisability of the treatment advocated by appellant’s experts, or questioning the wisdom of the diagnosis, prognosis, or causal relationship between the purported injuries and the alleged incident. Rather, appellee’s experts concluded that the treatment utilized by appellant’s experts “would make things worse or could make things worse clinically.” The former scenario may not generally require an intervening cause instruction, while the latter situation, like in the case at bar, should result in the instruction being given as requested.
[[Image here]]
[Because it] “created a reasonable possibility that the jury was indeed misled” “in the absence of a jury instruction addressing the issue.”
Id. at 719 (quoting Emory v. Fla. Freedom Newspapers, 687 So.2d 846, 848 (Fla. 4th DCA 1997)).
The trial court here did not abuse its discretion in giving a Stuart instruction. See Goldschmidt v. Holman, 571 So.2d 422, 425 (Fla.1990) (“Decisions regarding jury instructions are within the sound discretion of the trial court and should not be disturbed on appeal absent prejudicial error.”).
Affirmed.
KHOUZAM, J., Concurs.
KELLY, J., Concurs in result only.

. A letter of protection obligates the patient to pay the doctor from any money the patient recovers in a lawsuit. Francisco Ramos, Jr., Litigating, LSL FL-CLE 84 (2007); see State Farm Mut. Auto. Ins. Co. v. Bowling, 36 Fla. L. Weekly D1487, at *3 (Fla. 2d DCA July 8, 2011) (Crenshaw, J., concurring in part and dissenting in part) ("[I]n exchange for [the doctor's] services, [the patient] signed a letter of protection in which he assigned [to the doctor] his insurance benefits and any and all causes of action available to him under the policy....").

2. In a personal injury lawsuit, an impairment rating is relevant to whether and to what extent the plaintiff sustained an injury and to evaluate the amount of damage, if any. Music v. Hebb, 744 So.2d 1169, 1171-72 (Fla. 2d DCA 1999). An impairment rating “is an appraisal of the nature and extent of the patient's illness or injury as it affects [her] personal efficiency in one or more of the activities of daily living.” Fla. Worker's Comp. Inst., Inc., The 1996 Fla. Unif. Permanent Impairment Rating Schedule 4 (1996). A physician may assign a percentage of overall impairment for musculoskeletal conditions such as fractures, soft tissue injuries, herniated discs, pain associated with chronic muscle spasm, restricted range of motion, broken bones, and neurologic impairment. Id. at 11-14. Surgical treatment may add percentage points. Id. The thrust of Dr. Knezevich’s testimony was that the impairment rating reflected a worsening of Ms. Baber's condition after surgery.

. A proposed instruction published in the October 1, 2011, Florida Bar News, provides: Subsequent injuries caused by medical treatment: If you find that (defendant(s)) caused [loss] [injury] [or] [damage] to (claimant), then (defendant(s)) [is][are] also responsible for any additional [loss] [injury] [or] [damage] caused by medical care or treatment reasonably obtained by (claimant). “Proposed Jury Instructions in Civil Cases,” Fla. Bar News, Vol. 38, No. 18 (2011), at 28.

. In an interesting variation, the defendant in Berrios v. Spine, 76 So.3d 967 (Fla. 5th DCA 2011), argued that neither he nor the plaintiff should have to pay the medical provider’s bills that the defendant alleged were both unrelated to the accident and "noncompensa-ble [and] unlawful.”