DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*January Term 2014*

**KEVAN BOYLES, ESQUIRE,** as limited guardian of the property of
**ROMAN VONKOMARNICKI, III**,
Appellant,

v.

**A & G CONCRETE POOLS, INC.,** and **JAMES E. PREECE,**
Appellees.

No. 4D12-3334

[July 2, 2014]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Cynthia L. Cox, Judge; L.T. Case No. 312009CA 011849XXXX.

Bard D. Rockenbach and Adam J. Richardson of Burlington & Rockenbach, P.A., West Palm Beach; Steven Mitchel and Christopher I. Pezon of Steinger, Iscoe, Greene & McAfee, Fort Lauderdale, for appellant.

John A. Wilkerson of John A. Wilkerson, P.A., Daytona Beach, for appellees.

WARNER, J.

Appellant challenges a final judgment for the appellee in his personal injury action. He claims that the court erred when it admitted a physician's testimony that the surgery performed on appellant was unnecessary. He also argues that the court erred in denying his motion for new trial, because liability was admitted and appellant had suffered at least some injury as a result of the accident giving rise to his claim. As to the admission of evidence, we hold that the issue was not properly preserved. As to the denial of the motion for new trial, the evidence on liability and damages was not uncontradicted, and the expert's opinions on the plaintiff's injuries were discredited by plaintiff's own lack of credibility. Therefore, the trial court did not abuse its discretion in denying the motion for new trial.

In February 2008, plaintiff was the front seat passenger in a utility truck driven by plaintiff's co-worker, Mr. Poole, when it was rear-ended by a truck owned by A & G Concrete Pools and driven by one of its employees, Mr. Preece. The accident occurred after the utility truck was stopped for a red light with the A & G truck stopped behind it. When the light turned green, both trucks began to drive forward, and Preece merged left because the lane he was in was ending. A vehicle in front of the utility truck came to a sudden stop after crossing the intersection, forcing Poole to stop. Preece was traveling at 30 mph and was looking to merge into traffic. When he looked forward, the utility truck was stopped, and he realized he would not be able to stop in time. He hit his brakes and swerved, but nonetheless collided with the rear of the utility truck. Preece testified that he never saw brake lights or reflectors on the truck prior to impact. Photographs of the utility truck showed that the taillights were covered in mud.

At the time of the collision, plaintiff testified that his body was thrust forward, and that he hit his head on the dashboard. He complained of pain at the accident scene. A paramedic, who arrived at the scene and evaluated the plaintiff, testified that plaintiff told him that he had been involved in an automobile accident in 2001 and had suffered four herniated discs as a result. Plaintiff was transported to the emergency room but was released. Shortly thereafter, he was referred by his attorney to a chiropractor for treatment, and he told the doctor that he had not previously experienced problems with his neck or back. He continued to see the chiropractor for about four months.

When he did not improve, he was referred to Dr. Katzman, an orthopedic surgeon. He complained of neck and back pain but told the doctor that he had never had any injuries to his neck. When Dr. Katzman later discovered that plaintiff had encountered back problems in 2001, plaintiff maintained that the problems had been resolved, and that for at least two years prior to the 2008 accident he had not had any problems with or treatment for his back or neck.

After therapy and pain shots failed to relieve plaintiff's reported symptoms, Dr. Katzman performed a lumbar procedure in November of 2008 and a cervical procedure in January 2009, which the doctor testified were related to injuries sustained in the 2008 accident. The lumbar procedure was successful, but the cervical operation on his neck was not.

Plaintiff then went to see Dr. Dare, a neurosurgeon. During the initial evaluation, plaintiff did not inform Dr. Dare about the 2001 car accidents or any other treatments for back pain that he had received over the years.

When Dr. Dare later received medical records from plaintiff's attorney revealing a prior medical and injury history, he questioned plaintiff, who responded that he had returned to normal by the time of the 2008 accident. Dr. Dare testified: "What he told me at the time was that he was not suffering from neck pain or seeking active treatment for neck and/or back pain at the time of his accident." In reviewing plaintiff's subjective complaints as well as the MRI tests taken after the accident, Dr. Dare concluded that the 2008 accident caused a worsening of his back weakness, which had necessitated surgery. Dr. Dare also concluded that his neck condition was caused solely by the 2008 accident. Dr. Dare performed additional surgery on the plaintiff, including both neck and back surgery. When Dr. Dare examined plaintiff for the last time, nearly three years after the surgery, his condition had improved.

Contrary to his representations to Drs. Katzman and Dare, the plaintiff had been injured in two accidents in 2001 and had continued to encounter back pain and neck pain as a result. Following the first motor vehicle crash in 2001, he was treated by an urgent care clinic physician for low back pain. To this doctor, plaintiff complained of significant pain in the neck as well as the low back. The doctor prescribed Lorcet and Oxycontin, an addictive narcotic pain medication, as well as giving him trigger point injections. As plaintiff continued to complain of uncontrolled pain, the doctor increased the Oxycontin dosage. The doctor ordered an MRI of his back which showed a herniated disc in the lumbar region of his lower back. Although the neck MRI did not show a herniation, it was taken prior to the second accident in 2001.

A variety of other medical records showed the plaintiff made multiple complaints of pain to other medical providers. In 2002, plaintiff reported neck pain and low back pain. He saw a chiropractor from June through November 2005 to whom he complained of severe low back pain. He saw two other doctors in 2006, to whom he reported back and neck problems since his 2001 accidents. In December 2006, a nurse's note on a medical record stated that plaintiff reported that prolonged standing made his back hurt.

His co-workers also reported that he complained of back pain from the prior accident. One of them testified that he was taking pills three times a day for back pain before the accident in this case.

Dr. Schumacher performed a compulsory medical examination ("CME") of the plaintiff at the defendants' request. Plaintiff's physical examination showed normal neurological findings and no signs of spinal cord compression, muscle atrophy, or loss of any objective neurologic function.

He reviewed the cervical MRI films taken within a month of the 2008 accident and prior to surgery. He opined that the MRI revealed mild degenerative changes but no evidence of trauma or disruption of the discs. He also did not see any evidence of trauma on the lumbar MRI. When asked whether or not the plaintiff suffered a soft tissue injury in the accident of 2008, he responded: "I would say yes, but that comes down to subjectivity and the word of the person that gives it to you."

The court denied a motion for directed verdict on liability. During closing argument, defense counsel initially conceded that Preece was negligent but then backtracked later in his argument, concluding that while Preece had stated that he felt responsible, he also could not have seen the taillights. Defense counsel asked the jury to be the judge of how much Poole, as driver of the utility truck, contributed to the accident, since the lights of the truck were covered in mud and Poole slammed on his brakes to come to a sudden stop.

After closing argument, the jury was instructed on both liability and damages. They returned a verdict in which they checked "no" to the question "Was there negligence on the part of [Preece] which was a legal cause of loss, injury or damage to [Plaintiff]?" Plaintiff moved for a new trial, claiming that defendants had conceded negligence and all experts agreed that plaintiff had suffered at least some injury from the accident. The trial court denied the motion, prompting this appeal.

## I. Admission of Expert Opinion that Surgery was not Necessary

Plaintiff claims that the trial court erred in admitting defense expert Dr. Schumacher's testimony that the surgeries performed on plaintiff were unnecessary, because it had previously granted a motion in limine precluding CME doctors from testifying that surgery was not medically necessary. During his direct testimony, Dr. Schumacher was asked:

> Q: . . . Based on your examination, your education, experience and training, based on your review of the medical records, do you have an opinion within a reasonable degree of medical probability as to whether this auto accident in 2-5-08 caused or necessitated the neck and back surgeries in 2008 and 2009?
>
> A: Well, all I can say is in my practice, I wouldn't prescribe surgery in this case for someone with back and neck pain and MRI's that don't show anything on there that is pushing on

something, or show on examination an objective neurological deficit.

Plaintiff did not object to this testimony. While not raising this in his motion for new trial, he now claims on appeal that this testimony violated an order on a motion in limine. We conclude that the issue was not preserved.

Nine months after suit was filed, plaintiff filed a twenty-two page motion in limine, which appears to be a boilerplate, shotgun approach to various evidentiary issues. The motion sets forth forty-five different categories of evidence or testimony which the plaintiff claimed should not be admitted. Many of the categories had nothing to do with the facts of this case. The trial judge assigned to the case at that time entered an order which granted, denied, or delayed ruling on each paragraph according to the listed number assigned to each paragraph. The order (which we have shortened) appeared as follows:

ORDERED AND ADJUDGED as follows:

The Plaintiff's Motion in Limine is hereby Ruled upon as follows:

1. Not ruled upon;

2. Before offered, there must a proffer outside the presence of the jury;

. . . .

27. Granted;

28. Agreed upon by counsel;

29. Agreed upon by counsel;

. . . .

36. Granted[.]

Another circuit judge took over the division prior to trial a year and a half later. At the beginning of the trial, the judge considered a motion in limine filed by the defendant. As that motion was being discussed, the plaintiff objected that Dr. Schumacher may have considered additional

materials sent to him by defense counsel, which plaintiff contended violated the order on the motion in limine entered a year and a half earlier. The trial judge then reviewed the order granting the motion and expressed her displeasure with the order:

> THE COURT: . . . . [T]here is a bunch of them here that says ["]denied without prejudice to making contemporaneous objections. Before offered, there must be a proffer outside the presence of jury.["]  I have no idea.
>
> That's why when I am presiding over a trial, I want the motion in limine like the week before, so I remember.  I would never do a motion like this two years before.  And then have another judge rely on it.  I mean, I have no idea.
>
> So hopefully, *you all know and you are going to have to raise your objections* because I don't know what has been done.

(emphasis supplied).  The plaintiff's attorney agreed, noting that he was not even involved in the case when the order was entered.

The trial court thus changed the ruling and required the parties to raise objections to any matters covered by the motion in limine.  "[A] trial court has the inherent authority to reconsider a non-final order and modify or retract it." *Precision Tune Auto Care, Inc. v. Radcliff*, 731 So. 2d 744, 745 (Fla. 4th DCA 1999).  We think the trial court sensibly modified the prior ruling to require objections, and counsel acknowledged that modification.

Motions in limine can serve an important function in streamlining a trial.  The excessive use of them, however, can clog the docket and become a trap.  Boilerplate motions in limine filed early in a case have dramatically increased in the years since the amendment of section 90.104, Florida Statutes in 2003.  This amendment modified the rule requiring a contemporaneous objection to preserve an objection to the admission of evidence on appeal.  The amendment states: "If the court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."  Civil litigants now attempt to obtain blanket rulings well in advance of trial on every conceivable reason to object to evidence at trial, whether or not those matters apply to the facts of the case.  Therefore, when the trial is held later, litigants believe that they do not have to object at all, and appellate issues will still be preserved.  Trial judges may be put in the position of having to *sua sponte* strike evidence or hazard an appellate reversal with the requirement of a new trial.

The motion in limine filed in this case is an example of the type of motion that poses a problem for trial judges and litigants alike. Looking specifically to the item in question in this case, the motion requested an order prohibiting a CME doctor from testifying that plaintiff's surgeries were unreasonable or unnecessary. At the time of the motion, however, no CME doctor had examined the plaintiff. Therefore, there was no evidence as yet of any CME doctor's findings or report. It is hard for us to conclude that the trial court made a definitive ruling excluding evidence that did not even exist or excluded it without knowing the specific context in which it may be given. And, as we show later, the testimony of Dr. Schumacher was admissible.

Trial judges do not have to consider such motions well in advance of trial. Many times they should not rule in advance. Evidentiary issues often depend upon the context in which they are raised or the other evidence which is admitted or developed through discovery. Where evidence excluded by a prior order in limine is admitted inadvertently, simply because it was not pointed out to the trial court that the evidence violated the order, this provides an appealable issue and an opportunity for a new trial, even though the error could have been easily corrected had it been pointed out by the parties.

To prevent that from occurring in this case, the trial judge astutely required the parties to object to any evidence sought to be excluded. Because the plaintiff did not object, this issue was not preserved for appeal.

Even assuming that the trial court did not intend to overrule the entire order in limine and that the issue is preserved, we would still affirm. The motion in limine requested the exclusion of any testimony from a CME doctor that the plaintiff's surgeries were unreasonable or unnecessary, based upon *Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994). We conclude that the questions asked of Dr. Schumacher went to the causal link between the surgeries and the contested accident and thus did not address the same issue as was present in *Dungan.*

In *Dungan*, the plaintiff was injured in an automobile accident. *Id.* at 160. Although she required no immediate treatment, she developed pain and resulting disabilities and sought medical care. Her physician ultimately performed disc fusion surgery. At trial, the defendant's medical expert opined that he would have given the plaintiff conservative treatment, and that the disc fusion surgery was not appropriate or reasonable based upon the plaintiff's physical findings. *Id.* at 161-62.

After the plaintiff's continued objections, the trial court instructed the jury to disregard the expert's testimony "with respect to whether the surgery was reasonable or not," but the plaintiff's motion for a mistrial was denied. *Id.* at 161-62. Notwithstanding the trial court's ruling and over further objection, the expert testified that a substantial cause of the plaintiff's continuing pain and disability was the inappropriate surgery performed by her treating physician. *Id.* at 162. He concluded that the surgery actually caused additional pain and disability to the plaintiff and increased her permanent disability rating. The trial court then refused the plaintiff's request for a special jury instruction on the defendant tortfeasor's liability for aggravation of injuries caused by subsequent medical treatment. The jury returned a verdict denying recovery to the plaintiff, and she appealed.

The First District reversed, relying on *Stuart v. Hertz Corp.*, 351 So. 2d 703, 707 (Fla. 1977), for the proposition that "a wrongdoer is liable for the ultimate negligence on the part of a physician who has treated an injury in such a way that the treatment may have increased the damage which otherwise would have followed from the original wrong." *Dungan*, 632 So. 2d at 162. It concluded that the medical expert's testimony was directed at proving that the plaintiff's continuing pain and disability were the result of inappropriate surgery rather than the accident. *Id.* at 163. It pointed to defense counsel's opening and closing statements, in which counsel told the jury that the plaintiff's physician's initial treatment was incorrect, and the surgery he performed was inappropriate and led to problems which she did not have before the surgery. *Id.* at 162-63. It also concluded that the court erred in failing to give the special jury instruction. *Id.* at 163.

In *Nason v. Shafranski*, 33 So. 3d 117, 122 (Fla. 4th DCA 2010), we relied on *Dungan* to hold that the refusal to give a special instruction that the defendant was responsible for damages resulting from negligent or improper medical care was error requiring reversal.[1] There, as in *Dungan*, the plaintiff was injured in an accident, complained of neck and back pain, and was referred to a physician who diagnosed him with both cervical and lumbar disc herniations based upon MRI scans. *Id.* at 118. His treatment began with injections, but the doctor eventually performed several surgeries on the plaintiff, the last of which was a disc fusion. *Id.* at 118-

---

[1] In *Nason*, we noted "We have twice certified to the Florida Supreme Court the question of whether *Stuart v. Hertz* is still good law since the passage of the Tort Reform and Insurance Act of 1986, which made each tortfeasor liable only for his own negligence. *See Caccavella v. Silverman*, 814 So. 2d 1145 (Fla. 4th DCA 2002); *Letzter v. Cephas*, 792 So. 2d 481 (Fla. 4th DCA 2001). The Florida Supreme Court has declined to answer the certified questions in both cases." *Nason*, 33 So. 3d at 121 n.1.

The plaintiff continued to complain of pain and headaches and developed depression. His physician also testified that the plaintiff could need additional, more extensive surgery should his condition not improve.

The defense medical expert was Dr. Schumacher, the same medical expert as in the present case. He testified in *Nason* that his review of the MRI scans did not reveal any herniation and that the plaintiff had suffered a mere sprain in the accident which should have been conservatively treated. Over objection, he testified that he would not have recommended surgery. The plaintiff's counsel requested a similar instruction as the court considered in *Dungan,* but the court denied it, as it did not think that the defendant was claiming that the treating physician was negligent. Nevertheless, during closing argument, defense counsel attacked the treating physician and the surgery he performed, which counsel argued made the plaintiff's problems worse. *Id.* at 119-20. When the jury retired to deliberate, it asked a question which indicated that it was confused as to whether the defendant would be liable for the consequences of treatment. *Id.* at 120. It returned a verdict for the plaintiff but did not award the full cost of the surgeries, prompting an appeal.

Relying on *Stuart* and *Dungan,* we reversed because of the trial court's failure to give the special jury instruction. *Id.* at 120-22. We noted that, even though the defendant did not actually accuse the treating physician of malpractice, the defense medical expert's testimony and the defense closing argument "clearly placed this issue before the jury." *Id.* at 121. Although the plaintiff also argued Dr. Schumacher's testimony that he would not have recommended surgery was inadmissible, we did not rule on that issue, reversing only on the jury instruction issue. *Id.* at 122.

The present case is distinguishable from both *Nason* and *Dungan.* In both of those cases, the inappropriate or unnecessary surgery was claimed by the defendants to have actually made the plaintiff's condition worse, and the treating physicians' inappropriate treatment in performing the surgeries on the plaintiffs became the main point of attack. The same cannot be said for what occurred in this case. According to the plaintiff's own witnesses, the surgeries ultimately made the plaintiff's condition better. Thus, this case does not even fall into the *Stuart-Dungan-Nason* rule, which makes the tortfeasor liable for negligent medical treatment of an injury which increases the plaintiff's damages.

For damages, the plaintiff sought only his past and future medical expenses and lost earning capacity. The surgeries alone cost hundreds of thousands of dollars. The defense did not claim that these very expensive surgeries were inappropriate; the defense claimed they were related not to

-9-

this accident, but to the plaintiff's ongoing and well-documented past injuries. In opening statement and again in closing argument, defense counsel stressed that the main issue the jury would have to decide was whether the surgeries were caused by this accident, and the plaintiff voiced no objection to these statements. The defense never argued that the doctors were negligent or committed malpractice. What was argued was that the plaintiff failed to tell all of his doctors of his significant pre-existing condition, including his repeated complaints of neck and back pain which pre-existed the accident in this case. The defense suggested that the surgeries would have been a result of those conditions.

Thus, Dr. Schumacher's testimony was not inadmissible based upon the *Dungan* line of reasoning. He was asked whether the surgeries were necessary *as a result of the 2008 accident*. Based upon his review of the medical records, he concluded that they were not. If the order in limine could be understood to bar this causation type testimony, then the trial court would have erred in granting the motion on those grounds.

Dr. Schumacher's testimony in this case does mirror the testimony that he provided in *Nason*. He did not, however, ever accuse either Dr. Katzman or Dr. Dare of medical malpractice. He simply took a more conservative approach to treatment of the subjective complaints that the plaintiff expressed. Because *Nason* did not address whether Dr. Schumacher's testimony in that case was objectionable, it does not compel reversal. *Nason* held that the use of the testimony by the defense to create an issue of physician negligence required the court to give the special jury instruction on tortfeasor liability for subsequent medical treatment. Such an instruction was not even requested in this case.

Because Dr. Schumacher's testimony was not the *Dungan*-type testimony, accusing the treating physicians of malpractice, it was not covered by the motion in limine or the order granting it. It was admissible evidence, and no error occurred in its admission.

## II.  Denial of the Motion for New Trial

Generally, an order denying a motion for new trial is reviewed for an abuse of discretion. *Collins v. Douglass*, 874 So. 2d 629, 631 (Fla. 4th DCA 2004); *Smith v. Brown*, 525 So. 2d 868, 869 (Fla. 1988).

A trial court has discretionary authority to order a new trial when the verdict is contrary to the manifest weight of the evidence. *Brown v. Estate of Stuckey*, 749 So. 2d 490, 498 (Fla. 1999). In utilizing this discretionary power:

A trial judge has the responsibility to draw "on his [or her] talents, his [or her] knowledge, and his [or her] experience to keep the search for the truth in a proper channel," and the trial judge should always grant a motion for a new trial when "the jury has been deceived as to the force and credibility of the evidence or has been influenced by considerations outside the record."

*Id.* at 497 (quoting *Cloud v. Fallis,* 110 So. 2d 669, 673 (Fla. 1959)).

In *Brown,* the supreme court articulated the following test for determining whether the trial court abused its discretion in denying a motion for new trial:

[A]n appellate court must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of discretion. If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion.

*Brown,* 749 So. 2d at 497-98. Consequently,

The question for an appellate court is not whether or not the [verdict] was contrary to the manifest weight of the evidence presented below. . . . Rather, the appellate court is limited to considering whether or not the trial court abused its discretion in denying a new trial. In order for [the appellate court] to reach that conclusion, the evidence must be clear and obvious, and not conflicting . . . .

*Dewitt v. Maruhachi Ceramics of Am., Inc.,* 770 So. 2d 709, 711 (Fla. 5th DCA 2000) (citations and footnote omitted); *see also Weatherly v. Louis,* 31 So. 3d 803, 805 (Fla. 3d DCA 2009).

Plaintiff argues that the trial court abused its discretion in denying his motion for a new trial because the jury's verdict is contrary to the manifest weight of the evidence. Plaintiff claims that defendants admitted liability, and the jury was not free to reject the testimony from the expert witnesses who all testified that he suffered some injury from the 2008 accident. We disagree.

First, we do not agree that the defendants admitted liability at trial. While the attorney did appear to concede responsibility on behalf of Preece, he told the jury that it was their decision as to how much blame to assess to Poole, given the fact that Poole made a sudden stop and his taillights were covered with mud so that Preece could not see them. The jury could have determined that Preece was not negligent because of these other conditions.

The defense attorney also argued strenuously that the accident did not cause any of the injuries to the plaintiff. We disagree that all of the experts concluded that plaintiff suffered some injury. Dr. Schumacher testified that plaintiff suffered a soft tissue injury only if one believed the subjective complaints reported by the plaintiff.

The court read the standard jury instruction regarding expert testimony which instructs the jury that it

> may accept such opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training or education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in this case.

*See* Fla. Std. Jury Instr. (Civ.) 2.2(b) [since renumbered 601.2(b)]. However, "when medical evidence on permanence or causation is undisputed, unimpeached, or not otherwise subject to question based on other evidence presented at trial, the jury is not free to simply ignore or arbitrarily reject that evidence and render a verdict in conflict with it." *Campbell v. Griffith*, 971 So. 2d 232, 236 (Fla. 2d DCA 2008).

The jury's ability to reject expert testimony must be founded on some reasonable basis in the evidence. *Wald v. Grainger*, 64 So. 3d 1201, 1205-06 (Fla. 2011). This reasonable basis can include: conflicting medical evidence; evidence that impeaches the credibility or basis for an expert's opinion; the lack of candor of the plaintiff in disclosing prior accidents, prior medical treatment, and prior or subsequent similar injuries; conflicting lay testimony or evidence that disputes the injury claim; or the plaintiff's overall credibility relating to conflicting statements regarding the alleged injury. *Id.* at 1206; *see also Easkold v. Rhodes*, 614 So. 2d 495, 497-98 (Fla. 1993) (concluding that jury could reject expert medical testimony that the plaintiff had sustained permanent injuries from an automobile accident where the experts' medical opinions were premised on the plaintiff's self-reported false medical history).

In *Fell v. Carlin*, 6 So. 3d 119, 120 (Fla. 2d DCA 2009), the plaintiff moved for a directed verdict on the issue of whether he sustained an injury in an accident. The trial court denied the motion, and the jury found for the defendant. On appeal, the plaintiff argued that the testimony was undisputed that he had suffered an injury as a result of the accident.

The Second District noted that the jury heard testimony that would provide it with a reasonable basis to reject the medical expert's testimony. The medical opinions regarding plaintiff's injury were based on his subjective complaints of pain. As such, the validity of those opinions depended on the plaintiff's candor in reporting his complaints. The defendant's medical expert testified that while he believed the plaintiff sustained a non-permanent, soft tissue injury, his opinion was a "benefit of the doubt" diagnosis. He clarified that this meant he based his opinion on the plaintiff's subjective complaints of pain, which he assumed were truthful; however, if they were not truthful, his opinion would not be valid. *Id.* at 120-21. Thus, the court held that because the jury had a reasonable basis to conclude the plaintiff "was not candid with his doctors, it also had a basis to reject their opinions regarding whether he was injured as a result of the accident." *Id.* at 121; *see also Hernandez v. Gonzalez*, 124 So. 3d 988, 991 (Fla. 4th DCA 2013) (finding that "[a] jury may reject medical testimony, even on uncontroverted issues, provided it has a reasonable basis to do so, such as where there is conflicting lay testimony.").

Here, there is no question that the jury heard substantial evidence that plaintiff was less than candid with his doctors. He failed to tell them of his prior accidents. He also minimized his prior injuries and complaints, when the medical records showed his continual complaints of both low back and neck pain and treatment over the years. His co-workers testified to his complaints and his need to take medication for his complaints up until the time of this accident. All the doctors testified that their opinions were based in part upon the plaintiff's report of his pre-accident condition, as well as his subjective complaints after the accident. Similar to *Fell*, because the jury had a reasonable basis to conclude the plaintiff was not candid with his doctors, the jury had a reasonable basis to reject the doctors' opinions. Moreover, Dr. Schumacher's opinion that plaintiff suffered a soft tissue injury was predicated on plaintiff's subjective complaints of pain, which the doctor noted depended upon the plaintiff's candor. The trial court did not err in denying the motion for new trial.

For the foregoing reasons, we affirm the final judgment.

TUTER, JACK, Associate Judge, concurs specially with opinion.
LEVINE, J., dissents with opinion.

TUTER, JACK, Associate Judge, concurring specially.

I wholeheartedly agree with Judge Warner's reasoned analysis regarding the admission of the expert testimony from the defense expert in this case and write to concur in the motion in limine/preservation of error issues. More than a year-and-a-half prior to trial, plaintiff scheduled a hearing on a forty-five category motion in limine. At the time the motion was heard, pre-trial discovery was ongoing, medical expert depositions had not been completed, and a compulsory medical examination of plaintiff had neither been sought nor completed. Despite all of these pending matters, the predecessor trial judge ruled on the motion and granted plaintiff's request to exclude proposed and undeveloped defense testimony that plaintiff underwent unnecessary surgeries.

However, by the time the case went to trial, a successor judge was presiding over the matter and was left with these early and out-of-context motion in limine rulings. The successor judge rightly revisited the rulings and advised the parties to *make contemporaneous evidentiary objections* based on her unfamiliarity with the case. Thus, there was no definitive pre-trial ruling on the admissibility of the challenged testimony, and plaintiff was required to voice a contemporaneous objection to the testimony in order to preserve the issue for appeal. *Compare Philip Morris USA, Inc. v. Tullo*, 121 So. 3d 595, 601 (Fla. 4th DCA 2013) (contemporaneous objection required to preserve evidentiary issue for appeal when trial court does not make a definitive pre-trial ruling), *with* § 90.104(1)(b), Fla. Stat. (2010) (providing in relevant part that when a "court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal."). Plaintiff's failure to make any such objection precludes our consideration of his argument on appeal.

This scenario should serve as a cautionary tale. Motions in limine should never be used by litigants simply to get a "feel" for how the trial judge may view the evidence that will develop over the course of a trial. A significant number of motions in limine are not *true* motions in limine, but are simply an effort to engage in dialogue with the trial judge as to how he or she may view the evidence which will be offered at trial. Unfortunately, this puts the trial judge at a disadvantage, as the evidence ruled on is often not fully developed and cannot be considered in the context of the entire

-14-

case. It is also problematic that such rulings may be passed to successor judges who are then confronted with either blindly accepting the rulings or abandoning them. Venturing into the motion in limine foray too far in advance of trial or without the matter constituting a *true* motion in limine is fraught with peril for both litigants and the trial court.

LEVINE, J., dissenting.

I respectfully dissent from the majority opinion.

In this case, appellant filed a motion in limine to prevent the defense from arguing that appellant's medical surgery was not reasonable or necessary. The trial court granted the motion in limine based on case law from this court. Appellee violated the order in limine by directly asking the defense medical witness a question contrary to the order. Based on this improper line of questioning, I would reverse for a new trial.

Prior to trial, appellant filed a motion in limine which included the following requests:

> 24. An expert may properly explain his or her opinion on an issue in controversy by outlining the claimed deficiencies in the opposing expert's methodology so long as the expert does not attack the opposing treating physician or retained expert's ability, credibility, reputation or competence.
>
> . . . .
>
> 34. That any of the Plaintiff's treating physicians have committed medical malpractice or medical negligence or suffered any negative repercussions from the care rendered.
>
> . . . .
>
> 36. CME doctors are precluded from providing testimony wherein they opine that a Plaintiff's surgery was not reasonable or not necessary. . . .

(citations omitted).

Subsequently, the trial court issued an order that listed rulings for all of appellant's requests in the motion in limine, which included the following as it related to requests numbered 24, 34, and 36:

-15-

24. Agreed upon by counsel;

. . . .

34. Agreed as to this case;

. . . .

36. Granted;

At a hearing regarding a supplemental motion in limine, appellant brought up the fact that the predecessor judge previously granted a motion in limine limiting the defense's CME doctor to opinions expressly in their reports, which was request number 9 in appellant's original motion in limine. The trial court then reviewed the predecessor judge's order and stated the following:

> THE COURT: I mean, I am looking at this order on plaintiff's motion in limine, and it really does not tell me a lot. It's numbered and says not ruled upon, agreed by counsel. I have no idea what any of this means.
>
> [PLAINTIFF'S COUNSEL]: Number nine is the one we are talking about.
>
> THE COURT: Nine, granted. Yeah, that is all it says, granted. Granted as to what. Are you kidding me, two years ago. Whatever.
>
> ***Hopefully, you know, because there is a bunch of them here that says denied without prejudice to making contemporaneous objections. Before offered, there must be a proffer outside of the presence of jury.*** I have no idea.
>
> That's why when I am presiding over a trial, I want the motion in limine like the week before, so I remember. I would never do a motion like this two years before. And then have another judge rely on it. I mean, I have no idea.
>
> ***So hopefully, you all know and you are going to have to raise your objections because I don't know what has been done.***

[PLAINTIFF'S COUNSEL]:  Yes, Your Honor.  I mean, I was not even involved in the case.

THE COURT:  On Dr. Schumacher's opinion, it is granted in part.  I guess it is an ora [sic] tenus motion.  Granted in part and denied in part.  His opinions may not change.  If there is any question about him updating or supplementing or changing the opinion in any way, we need to proffer that part of the testimony before we proceed to the jury.

I am not going to limit him to say, you could only rely or review records in 2001.  If he has looked at records since then, without admitting the contents of those records or disclosing the contents, the details of those records, then I will reserve on that issue subject to a proffer.

I don't know what you are, or what he is trying to get in something, whether it is something that you have provided or it is additional treatment.

(emphasis added).

The majority believes that the second statement in bold, reminding the parties to object, effectively vacated the motion in limine granted by the predecessor judge regarding forty-five specific requests.  However, it appears just as likely that the trial court was referring to the first statement in bold, reminding the parties to object if the motions were denied without prejudice, or contemporaneously object if it was one of the items not ruled upon.  The order of the prior judge included twenty requests agreed to by the parties; four requests denied by the court, including two requests denied without prejudice to making contemporaneous objections; five requests granted by the court; fifteen requests not ruled upon; and one request requiring a proffer outside the presence of the jury before evidence is offered.  Nowhere in the record is there any reference directly stating or alluding to the fact that all of the prior motions in limine granted, denied, or denied without prejudice had been vacated.

In fact, the best evidence that the trial court did not vacate the order in limine—specifically as to items 24, 34, and 36—is appellee's own brief.  After listing requests 16, 24, 34, and 36, appellee concedes to the following in its answer brief: "The trial court entered a written order denying request number 16, and the remainder of the requests were agreed by the parties or granted by the trial court.  (R: 105-106)."  Appellee argues that

appellee's questioning of the CME doctor "did not violate the Order in Limine." Nowhere does appellee even argue or hint that the trial court's order was vacated. All parties argue under the clear assumption that the order in limine as to requests 24, 34, and 36 was not vacated.

"Sitting as an appellate court, we are precluded from making factual findings ourselves in the first instance." *Douglass v. Buford*, 9 So. 3d 636, 637 (Fla. 1st DCA 2009); *Farneth v. State*, 945 So. 2d 614, 617 (Fla. 2d DCA 2006) ("A fundamental principle of appellate procedure is that an appellate court is not empowered to make findings of fact."). "Relatedly, we 'cannot employ the tipsy coachman rule where a lower court has not made factual findings on an issue and it would be inappropriate for an appellate court to do so.'" *Featured Props., LLC v. Blky, LLC*, 65 So. 3d 135, 137 (Fla. 1st DCA 2011) (quoting *Bueno v. Workman*, 20 So. 3d 993, 998 (Fla. 4th DCA 2009)). Where the record lends itself to differing interpretations in retrospect, the appellate court should restrict itself to the record as understood by all the parties.

If the record does not clearly support a finding that the motion in limine has been vacated, then appellant did preserve the record on the violation of requests 24, 34, and 36. "Section 90.104(1) was amended in 2003 to provide that, 'If the court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.'" Charles W. Ehrhardt, Florida Evidence § 104.5 (2014 ed.). It would be unfair to require appellant to object to evidence introduced in violation of the previously-granted requests in limine—specifically 24, 34, and 36— where the record does not clearly support that the trial court vacated the order granting those requests. Appellant would correctly rely on section 90.104(1), which states that appellant need not object in order to preserve the issue, where the trial court has previously granted requests within the motion in limine and where the "vacating" of the entire motion in limine is not clear to the parties. "[I]t is imperative that the in limine order be clear and that all parties concerned have an accurate understanding of its limitations." *Reidelberger v. Highland Body Shop, Inc.*, 416 N.E.2d 268, 271 (Ill. 1981).

In *Reidelberger*, a predecessor judge granted a motion in limine prohibiting certain questions regarding the speed and movement of the decedent's vehicle. During trial, the successor judge made several statements adopting differing restrictions as to testimony regarding the vehicle's movement and speed, inconsistent with the original limine order. The Illinois Supreme Court found that the trial court's rulings during trial were not sufficiently specific or clear. As such, violations of these new

rulings could not support a basis for granting a new trial. Similarly, in the present case, the trial court's ruling was not sufficiently specific or clear to support a finding that the trial court intended to vacate the original order in limine. Because the trial court's statements were ambiguous as to any intention to modify or vacate the limine order, the original order in limine controlled.

The majority argues that even if "the trial court did not intend to overrule the entire order in limine and that issue is preserved, we would still affirm." I also respectfully disagree. Clearly, the questions asked by appellee violated the previously granted motion in limine. During trial, appellee elicited the following testimony from Dr. Schumacher:

> Q Based on your examination, your education, experience and training, based on your review of the medical records, do you have an opinion within a reasonable degree of medical probability as to whether this auto accident in 2-5-08 caused or necessitated the neck and back surgeries in 2008 and 2009?
>
> A Well, all I can say in my practice, I wouldn't prescribe surgery in this case for someone with back and neck pain and MRI's that don't show anything on there that is pushing on something, or show on examination an objective neurologic deficit.
>
> That doesn't mean that if he had surgery, it is not malpractice if someone did. It is just my practice and the way I was trained that I would not prescribe surgery for that.

The questions asked by appellee violated the specific order in limine of the trial court. The trial court granted request 36 in which appellant requested that "CME doctors [be] precluded from providing testimony wherein they opine that a Plaintiff's surgery was not reasonable or not necessary."

In a line of cases starting with *Stuart v. Hertz Corp.*, 351 So. 2d 703, 706 (Fla. 1977), Florida courts have concluded that "[a]n active tortfeasor should not be permitted to confuse and obfuscate the issue of his liability by forcing the plaintiff to concurrently litigate a complex malpractice suit in order to proceed with a simple personal injury suit." This is because "the rule is well established that a wrongdoer is liable for the ultimate result, although the mistake or even negligence of the physician who treated the injury may have increased the damage which would otherwise

have followed from the original wrong." *Id.* at 707 (quoting 57 Am. Jur. 2d *Negligence* § 149, at 507).

Applying *Stuart*, this court has stated that a "third-party malpractice claim could not be tried as part of the main lawsuit over the plaintiff's objection." *Nason v. Shafranski*, 33 So. 3d 117, 121 (Fla. 4th DCA 2010). This court concluded that "'unnecessary surgery may constitute medical malpractice where it deviates from the standard of care.' Although the defendants carefully avoided the term 'malpractice' during trial, Dr. Schumacher's testimony and the defendants' closing argument clearly placed this issue before the jury." *Id.* (citation omitted).

In the present case, the same Dr. Schumacher testified effectively that the surgery was unnecessary and that he would not have prescribed surgery in this case. As stated before by this court, unnecessary surgery could constitute medical malpractice. Further, in this case, the question and answer by Dr. Schumacher not only violated the order in limine, but also clearly placed the necessity of appellant's surgery before the jury. *See Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994) (finding trial court reversibly erred in admitting testimony that plaintiff received inappropriate medical treatment for injuries sustained in an automobile accident).

The testimony of Dr. Schumacher relied on by appellant in his motion for new trial is relevant to a harmless error analysis.[2] The error is not harmless because it cannot be said it is more likely than not that the improper testimony in violation of the order in limine "did not influence the trier of fact and thereby contribute to the verdict." *Special v. Baux*, 79 So. 3d 755, 771 (Fla. 4th DCA 2011).

During trial, Dr. Schumacher testified as follows:

> Q Based on your examination, education and experience and training, and based on your review of the medical records, ***do you have an opinion within a reasonable degree of medical probability as to whether this auto accident on 2-5-08 caused a minor soft tissue injury?***
>
> A ***Well, I would say yes***, but that comes down to subjectivity and the word of the person that gives it to you. If they say -- and many of us have had this, where you might have fallen or been in an accident or what have you, where

_____

[2] Because I would reverse based on the violation of the order in limine, it is not necessary to address the merits of the motion for new trial.

you have a stiff neck the next day. That's what we call a minor soft tissue injury.

They don't necessarily show up on a x-ray or MRI scan, but we do believe it is microscopic. And it does cause some spasm, but if there is no radiology that shows an injury. That should spontaneously resolve or resolve with some mild massage, what have you, in a couple weeks to a few months at the latest.

(emphasis added).

In this case, Dr. Schumacher, the defense medical witness, conceded that appellant had suffered soft tissue injury as a result of the 2008 accident. However, the jury answered "No" to the first question on the verdict form, which asked, "[W]as there negligence on the part of [defendant] which was the legal cause of loss, injury or damage to [plaintiff]." Based on the testimony and admission of Dr. Schumacher as to appellant's resulting soft tissue injury, the placing of inadmissible evidence before the jury in violation of the granted motion in limine cannot be said to be harmless error. *See Special,* 79 So. 3d at 771.

In conclusion, I would reverse based on the violation of the order in limine, and I would find the admission of this evidence before the jury was not harmless error.

* * *

***Not final until disposition of timely filed motion for rehearing.***